DAVID LANDRUM, OSB #955425
Senior Deputy City Attorney
Email: david.landrum@portlandoregon.gov
DANIEL SIMON, OSB #124544
Assistant Deputy City Attorney
Email: dan.simon@portlandoregon.gov
Office of City Attorney
1221 SW 4th Avenue, Suite 430
Portland, OR  97204
Telephone: (503) 823-4047
Facsimile: (503) 823-3089
        Attorneys for Defendants

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| **JOSEPH WALSH**, | **3:15-cv-01666 SI** |
| **PLAINTIFF,** | |
| v. | **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| **BRYANT ENGE, CHARLIE HALES, CITY OF PORTLAND,** | |
| **DEFENDANTS.** | |

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

I.      MOTION ....................................................................................................................1

II.     MEMORANDUM ......................................................................................................1

        A.      Nature of Plaintiff's Claim.............................................................................1

        B.      Essential Facts ................................................................................................2

                1.      Exclusion at Issue ................................................................................3

                2.      Plaintiff's History of Exclusion from City Council Meetings ...................4

                3.      Plaintiff's History of Disruption of City Council Meetings ......................5

        C.      Legal Argument ...............................................................................................6

                1.      Summary Judgment Standards.............................................................6

                2.      No Justiciable Case or Controversy.....................................................9

                3.      No Unconstitutional Restriction on Plaintiff's Speech...........................15

III.    CONCLUSION........................................................................................................33

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242, 106 S.Ct. 2505 , 91 L.Ed.2d 202 (1986)........................................ 7, 8

*Bricker v. TriMet,,*
    2013 WL 2037123 (D.Or.2013)........................................................................ passim

*Bush v. San Diego,*
    2010 WL 2465034 (S.D. Cal., June 11, 2010)....................................................... 17

*Celotex Corp. v. Catrett,*
    477 U.S. 318 (1986)............................................................................................ 7, 8

*Center for Bio-Ethical Reform, Inc. v. Los Angeles County Sherriff Dept.,*
    533 F.3d 780 (9th Cir. 2008) ................................................................................. 26

*City of Los Angeles v. Lyons,*
    461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)....................................... 10, 11

*City of Madison, Joint Sch. Dist. No. 8 v. Wisconsin Employment Relations Comm'n,*
    429 U.S. 167, 97 S.Ct. 421 50 L.Ed.2d 376 (1976)............................................... 29

*Clark v. Cmty. for Creative Non–Violence,*
    468 U.S. 288 (1984).............................................................................................. 21

*Cornelius v. NAACP Legal Defense and Educational Fund, Inc.,*
    473 U.S. 788, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985)............................... 15, 16, 22

*Crawford-El v. Britton,*
    523 U.S. 574 (1997)................................................................................................ 7

*Dallas v. Stanglin,*
    409 U.S 19 (1989)................................................................................................. 17

Page i –     DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

*Dean v. Jones,*
    No. CV 09-1102-AC, 2010 WL 1873089 (D. Or. Mar. 2, 2010) .......................................... 15
*Demery v. Arpaio,*
    378 F.3d 1020 (9th Cir.2004) ...................................................................................... 10
*Fair Hous. Council v. Riverside Two,*
    249 F.3d 1132 (9th Cir.2001) .................................................................................... 8, 9
*Flast v. Cohen,*
    392 U.S. 83 (1968) ........................................................................................................ 14
*Heffron v. International Society for Krishna Consciousness,*
    452 U.S. 640, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981) ............................................... 15
*Hicks v. City of Portland,*
    CV 04-825-AS, 2006 WL 3311552 (D. Or. Nov. 8, 2006) ........................................... 7
*Holiday v. Guisto,*
    CIV. 03-01385-AS, 2004 WL 1792466 (D. Or. Aug. 10, 2004), *report and
    recommendation adopted* CV 03-1385-AS, 2004 WL 2403823 (D. Or. Oct. 26, 2004).......... 7
*Independent Living Ctr. of So. Calif., Inc. v. Maxwell–Jolly,*
    590 F.3d 725 (9th Cir.2009) ...................................................................................... 9, 10
*Johns v. County of San Diego,*
    114 F.3d 874 (9th Cir. 1997) ...................................................................................... 15
*Kindt v. Santa Monica Rent Control Bd.,*
    67 F.3d 266 (9th Cir. 1995) ........................................................................ 21, 28, 29, 30
*League of Oregon Cities v. State,*
    334 Or. 645, 56 P.3d 892 (2002) ................................................................................. 13
*Lehman v. City of Shaker Heights,*
    418 U.S. 298, 94 S.Ct. 2714, 41 L.Ed.2d 770 (1974) ................................................. 22
*Lytle v. Household Mfg., Inc.,*
    494 U.S. 545, 110 S.Ct. 1331, 108 L.Ed.2d 504 (1990) ............................................... 8
*Martin v. City of Boise,*
    2015 WL 5708586 (D. Idaho Sept. 28, 2015) ............................................................. 14
*Martinez v. Peters,*
    No. 6:13-CV-00384-PK, 2015 WL 1607391 (D. Or. Apr. 8, 2015)........................... 6, 7, 8, 9
*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,*
    475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ................................................. 8
*Mead v. Gordon,*
    583 F.Supp.2d 1231 (D. Or. 2008) ............................................................... 26, 27, 28, 32
*Minn. State Bd. for Cmty. Colls. v. Knight,*
    465 U.S. 271 (1984)................................................................................................ 20, 21
*Moreland v. Las Vegas Metro. Police Dep't,*
    159 F.3d 365 (9th Cir.1998) ......................................................................................... 7
*Morgan v. Sisters Sch. Dist. No. 6,*
    353 Or. 189, 301 P.3d 419, 2013 WL 179480 (Or. Jan. 17, 2013)........................... 13
*Norse v. City of Santa Cruz,*
    629 F.3d 966 (9th Cir. 2010) ................................................................................. 21, 22
*Oregon Barter Fair v. Jackson County, Or.*
    372 F.3d 1128 (9th Cir.2004) ...................................................................................... 10
*O'Shea v. Littleton,*
    414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974) ................................................... 11
*Perry Educ. Ass'n v. Perry Local Educators' Ass'n,*
    460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983)................................................... 22
*Poe v. Ullman,*
    367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961)................................................... 10

Page ii –    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

*Preiser v. Newkirk,*
    422 U.S. 395, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975)........................................ 9
*Reeves v. Sanderson Plumbing Products, Inc.,*
    530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)................................... 8
*Reza v. Pearce,*
    2015 WL 4899122 (9th Cir., Aug. 18, 2015)............................... 19, 30, 31, 32
*Rosebrock v. Beiter,*
    788 F. Supp. 2d 1127 (C.D. Cal. 2011) ......................................................... 22
*Rosemere Neighborhood Ass'n v. EPA,*
    581 F.3d 1169 (9th Cir.2009) ......................................................................... 9
*S. Pac. Transp. Co. v. Redden,*
    458 F. Supp. 593 (D. Or. 1978) ................................................................... 14
*Scott v. Harris,*
    550 U.S. 372, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007)............................. 8
*Sereno-Morales,*
    819 F. Supp. 2d ............................................................................................. 8
*Smith v. Arkansas State Highway Employees, Local*
    1315, 441 U.S. 463 (1979)........................................................................... 20
*Texas v. Johnson,*
    491 U.S. 397 (1989)............................................................... 16, 17, 18, 19
*TVKO v. Howland,*
    335 Or. 527, 73 P.3d 905[] (2003)............................................................... 13
*U.S. Parole Comm'n v. Geraghty,*
    445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980)............................... 10
*United States v. Mitchell,*
    915 F.2d 521 (9th Cir.1990) ......................................................................... 15
*United States v. O'Brien,*
    391 U.S. 367 (1968)............................................................... 16, 17, 19, 20
*United Steelworkers of America v. Phelps Dodge Corp.,*
    865 F.2d 1539 (9th Cir.1989) ........................................................................ 7
*Ward v. Rock Against Racism,*
    491 U.S. 781 (1989)..................................................................................... 21
*Warren v. City of Carlsbad,*
    58 F.3d 439 (9th Cir.1995) ............................................................................ 8
*White v. City of Norwalk,*
    900 F.2d 1421 (9th Cir. 1990) ............................................... 18, 19, 21, 32

**Statutes**
42 U.S.C. §1983.................................................................................. 11, 29, 30
United States Constitution, Article III ....................................................... 9
ORS 28.010.................................................................................................. 11, 12
ORS 28.020.......................................................................................................... 13
ORS 192.630.......................................................................................................... 2
ORS 192.650.......................................................................................................... 2

**Rules**
Fed. R. Civ. P. 56 .......................................................................................... 1, 8
Fed.R.Civ.P. 56(a) ........................................................................................... 7
Fed.R.Civ.P. 56(c) ........................................................................................... 7

Page iii –   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## I.   MOTION

Pursuant to Fed. R. Civ. P. 56, defendants Bryant Enge; Mayor Charlie Hales; and the City of Portland (collectively "City defendants") move this Court for summary judgment in their favor because there is no genuine issue of material fact and defendants are entitled to summary judgment as a matter of law on all of Plaintiff's claims as follows:

A.        As a threshold matter, City defendants move for summary judgment on all of Plaintiff's claims for relief because there is no justiciable case or controversy before the court.

B.        Alternatively, City defendants move for summary judgment on all of Plaintiff's claims for relief because Plaintiff's disruptive conduct at City Council meetings is not conduct protected by the First Amendment.

C.        City defendants move for summary judgment on all of Plaintiff's claims for relief because the City's exclusions of Plaintiff are a valid exercise of the City's authority to regulate speech in a limited public forum through reasonable time, place and manner restrictions.  The City's Rules of Conduct for City of Portland Properties and the City's use of exclusions to enforce the Rules of Conduct are valid time, place and manner restrictions under First Amendment jurisprudence.

Plaintiff's claims should be dismissed with prejudice.

This motion is based on Fed. R. Civ. P. 56, the Court's file and records in this action, the supporting Memorandum of Law, and the Declarations of Bryant Enge, John Chandler, James Wood, Tracey Le and Karla Moore-Love, with attached exhibits, filed herewith.

## II.   MEMORANDUM

## A.    <u>Nature of Plaintiff's Claim</u>

Plaintiff *pro se* Walsh brings this action to challenge the City of Portland's exclusion of Walsh from Portland City Hall for a 60 day period, from July 15, 2015 to September 15, 2015. (*See docket #2, Complaint, Attachment #1, 07/15/2015 Notice of Exclusion from City Property*).

Page 1  –   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Walsh challenges his exclusion based on the First Amendment of the U.S. Constitution (*see docket #2, Complaint, Sec. II.B*).  The complaint names three defendants:  (1) Bryant Enge, the Director of the City of Portland's Bureau of Internal Business Services; (2) Charlie Hales, the Mayor of Portland; and (3) the City of Portland.  Plaintiff alleges that Mayor Hales and Bryant Enge use exclusions to ban "activist organizations" from future city Council meetings at will (*Complaint, Sec. III*).  Plaintiff seeks injunctive relief against the City excluding him from City property (*Complaint, Sec. IV*).

**B.**    **Essential Facts**

Portland City Council Meetings are conducted and recorded in accordance with ORS 192.630 and 192.650, and with Portland City Code Chapter 3.02.  (*See Moore-Love Declaration, ¶7*).  All City Council meetings are video-recorded, streamed live on the internet and broadcast live on public access television channel 30.  (*See Moore-Love Declaration, ¶8*).  The television broadcasts include closed-captioned text provided through a vendor, LNS Captioning.  To create the official minutes the Clerk's office combines the Council Agenda Disposition with the closed-caption file provided by LNS Captioning.  Then, the Council Clerk and other members of the Clerk's office review the closed-captioning and insert the correct names to the text, creating the final official minutes.  (*See Moore-Love Declaration, ¶11*).

Beginning in early 2014, Mayor Hales began giving a brief admonishment at the beginning of the public testimony portion of City Council meetings reminding individuals observing and testifying that they were expected to observe basic decorum while in Council chambers.  The basic decorum allows them to give a thumbs up or wave of the hand in support but prohibits vocal demonstration that might interrupt or drown out testimony (*see Moore-Love Declaration, ¶12*).  The Rules of Conduct are posted in the windows outside the public entrance to City Hall on 4th Avenue *(see Enge Declaration, ¶12, Exhibit D.)* An abbreviated list of the

Page 2  –   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Rules of Conduct in Portland City Hall is posted inside the public entrance to City Hall on 4th Avenue.  *(See Enge Declaration, ¶14, Exhibit E).*

Plaintiff is a self-described activist who frequently engages with City government.  He is a frequent visitor to City Hall and its adjacent rights of way.  (*See Wood Declaration, ¶6).* Plaintiff frequently protests outside City Hall using an amplified "bullhorn" to broadcast his opinion (*See Wood Declaration, ¶7).*  He also regularly attends City Council meetings to observe and provide public testimony (*See Wood Declaration, ¶8; Chandler Declaration, ¶7; Moore-Love Declaration, ¶5).*  Plaintiff has a history of being disruptive and combative with the City Council during these meetings (*see Wood Declaration, ¶9; Chandler Declaration, ¶8, Moore-Love Declaration ¶5).*

### 1.    Exclusion at Issue

The underlying facts of the claim are not in dispute and are laid out in the July 15, 2015 Exclusion Notice attached to Plaintiff's Complaint.  (*See docket #2, at Attachment #1).*

On July 8, 2015, Plaintiff attended the weekly Portland City Council meeting to observe and provide public testimony *(see Wood Declaration, ¶18-19, Exhibit E; see also Enge Declaration, ¶26, Exhibit J).*  At the beginning of the July 8, 2015 Council meeting, Mayor Hales, presiding officer of the City Council, informed all present of the ground rules and courtesy expectations for meeting attendance *(see Moore-Love Declaration, Exhibit F, p. 7; see also Le Declaration, Exhibit A, video entitled "cc070815," at 02:09-03:03).*  During the 07/08/2015 Council meeting, Plaintiff interrupted an agenda matter by yelling, first from the public seating area and then at the presentation table located directly in front of the Council (*see Le Declaration, Exhibit A, video entitled "cc070815" at 1:59:12-02:00:28; see also Wood Declaration, ¶18-19, Exhibit E).*  Mayor Hales repeatedly asked Plaintiff to stop, but Plaintiff continued his interruption.  The Mayor called for a recess in the Council session, during which

Page 3  –   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

City Hall building security escorted Plaintiff out of the Council Chamber.  (*See Le Declaration, Exhibit A, video entitled "cc07082015" at 1:59:12-02:00:28; see also Wood Declaration, ¶18-19, Exhibit E*).  While outside of the Council Chamber, Plaintiff engaged in a loud confrontation with City staff in the atrium area of City Hall (*see Chandler Declaration, ¶14-16, Exhibit D; see also Wood Declaration, ¶18-19, Exhibit E*).

    **2.**        **Plaintiff's History of Exclusion from City Council Meetings**

The July 15, 2015 exclusion was Plaintiff's third exclusion from City Council meetings due to disruptive behavior.  The 60-day period of the July 15, 2015 exclusion was predicated, in part, on Plaintiff's pattern of disrupting City Council meetings (*See Enge Declaration, Exhibit J*).  Plaintiff was formally excluded from City Council meetings on September 17, 2014 and May 20, 2015 (*see Enge Declaration, Exhibits H and I*).

On September 17, 2014, Plaintiff was excluded from the Council Chamber on the second and third floors of City Hall for a period of 30 days, due to his disruptive conduct in Council meetings conducted on January 9, 2014, March 12, 2014, May 7, 2014, and September 10, 2014 (*see Enge Declaration, Exhibit H*).

On May 20, 2015, Plaintiff was excluded from the Council Chamber for a period of 30 days due to his disruptive conduct in a Council meeting conducted on May 13, 2015, and also due to Plaintiff's pattern of disruptions catalogued in the September 2014 exclusion notice.  (*See Enge Declaration, Exhibit I*).

Each of the three Exclusion Notices provided Plaintiff with information regarding his right to appeal the exclusion to the City's Code Hearings Office, availability of live-streaming video of Council meetings online and the process for providing written testimony on Council agenda items (*see Enge Declaration, Exhibits H, I and J*).

Page 4  –   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

3.      **Plaintiff's History of Disruption of City Council Meetings**

For reference, a brief chronological summary of the City's view of each of the events as stated in the three Exclusion Notices and associated security reports, along with accompanying video from each corresponding City Council session, is as follows:

January 9, 2014 – Plaintiff became agitated and argumentative during the Council meeting and incited others to be disruptive.  When the Mayor informed Plaintiff that Plaintiff's opportunity for testimony had concluded, Plaintiff threw a booklet in the Mayor's direction.  *(See Le Declaration, Exhibit A, City Council Meeting video excerpt entitled "cc010914" at 1:19:00-1:22:40; see also Moore-Love Declaration, Exhibit A, pp. 8-9; Chandler Declaration, ¶9, Exhibit A).*

March 12, 2014 – Plaintiff repeatedly interrupted Council proceedings with out-of-turn comments and statements while other persons were speaking, and Plaintiff physically and verbally disrupted the Council session.  *(See Le Declaration, Exhibit A, City Council Meeting video excerpt entitled "cc031214" at 13:49-14:30; see also Moore-Love Declaration, Exhibit B (City Council minutes), pp. 7, 9-10; Wood Declaration, ¶¶10-11, Exhibit A).*

May 7, 2014 – Plaintiff was argumentative and discourteous**, and displayed hostility towards another citizen who testified on a matter contrary to Plaintiff's position**.  *(See Le Declaration, Exhibit A, City Council Meeting video excerpt entitled "cc050714," at 11:50-15:25; see also Moore-Love Declaration, Exhibit C, pp. 8-9; Wood Declaration, ¶12-13, Exhibit B).*

September 10, 2014 – Plaintiff interrupted the Council's deliberation of a matter by attempting to engage in debate with the Council, and continued to interrupt Mayor Hales when Mayor Hales repeatedly asked Plaintiff to stop.  Plaintiff yelled at the Council and slammed his hand onto the conference table at least twice *(see Le Declaration, Exhibit A, City Council*

Page 5  –   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

*Meeting video excerpt entitled "cc091014" at 00:45-07:02; see also Moore-Love Declaration, Exhibit D, pp. 6-8; Wood Declaration, ¶¶ 14-15, Exhibit C).*

<u>May 13, 2015</u> – Plaintiff and others interrupted the Council attorney while the attorney was providing legal guidance to the Council members.  Plaintiff and others later disrupted a motion made by a Council member by loudly chanting and booing during the motion.  During a recess, Plaintiff encouraged others to interrupt Council and to "gain control of Council Chambers." After the Council meeting resumed, Plaintiff and others continued to chant and boo during other citizens' testimony (*see Le Declaration, Exhibit A, City Council Meeting video excerpts entitled "cc051315" at 9:42-10:10, 10:52-11:02 and 47:42-1:01:45; see also Moore-Love Declaration, Exhibit E, pp. 8-12; Wood Declaration, ¶¶16-17, Exhibit D; Chandler Declaration, ¶12-13, Exhibit C).*

<u>July 8, 2015</u> – Plaintiff had exited the City Council chamber when the Council engaged in a vote on an agenda item on which Plaintiff had requested to testify.  The Council moved on to the next item because Plaintiff was absent.  Shortly thereafter, Plaintiff returned to the Council session and interrupted the current agenda item by demanding that the Council return to the previous item.  Plaintiff approached the conference table in front of City Council and slammed his hand onto it.  After the Mayor excluded Plaintiff from the Council chamber, Plaintiff then engaged in a loud confrontation with City staff in the atrium of City Hall (*see Le Declaration, Exhibit A, City Council Meeting video excerpt entitled "cc070815" at 01:59:12-02:00:28; see also Moore-Love Declaration, Exhibit F, p. 9; Wood Declaration, ¶¶18-19, Exhibit E).*

**C.**   <u>**Legal Argument**</u>

    **1.**   **Summary Judgment Standards**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Martinez v. Peters*, No. 6:13-CV-00384-PK, 2015 WL 1607391, at *2 (D. Or. Apr. 8, 2015), *citing*

Page 6  –   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Fed.R.Civ.P. 56(a).  A party taking the position that a material fact either "cannot be or is genuinely disputed" must support that position either by citation to specific evidence of record "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," by showing that the evidence of record does not establish either the presence or absence of such a dispute, or by showing that an opposing party is unable to produce sufficient admissible evidence to establish the presence or absence of such a dispute.  *Martinez*, 2015 WL 1607391, at *2, *citing* Fed.R.Civ.P. 56(c).  The substantive law governing a claim or defense determines whether a fact is material.  *Martinez*, 2015 WL 1607391, at *2, *citing Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir.1998).

A party opposing a properly supported motion for summary judgment "may not respond simply with general attacks upon the [movant's] credibility, but rather must identify affirmative evidence from which a jury could find that the [opposing party] has carried his or her burden of proving" the elements of his or her claim.  *Holiday v. Giusto*, CIV. 03-01385-AS, 2004 WL 1792466 (D. Or. Aug. 10, 2004), *report and recommendation adopted* CV 03-1385-AS, 2004 WL 2403823 (D. Or. Oct. 26, 2004), *citing Crawford-El v. Britton,* 523 U.S. 574, 600 n. 22 (1997).  If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case, and on which he bears the burden of proof at trial, summary judgment must be granted.  *Hicks v. City of Portland*, CV 04-825-AS, 2006 WL 3311552, *4 (D. Or. Nov. 8, 2006), *citing Celotex,* 477 U.S. at 322-23.

Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.  *Hicks*, 2006 WL 3311552 at 4, *citing Anderson,* 477 U.S. at 248.  A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact.  *Hicks*, 2006 WL 3311552 at 4, *citing United Steelworkers of America v. Phelps Dodge Corp.,* 865 F.2d 1539,

Page 7  –   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1542 (9th Cir.1989). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007), *quoting Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Sereno-Morales*, 819 F. Supp. 2d at 1150, *citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (internal quotation marks omitted).

Summary judgment is not proper if material factual issues exist for trial. *Martinez*, 2015 WL 1607391, at *2, *citing, e.g., Celotex Corp. v. Catrett*, 477 U.S. 318, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.1995), *cert. denied*, 516 U.S. 1171, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996). In evaluating a motion for summary judgment, the district courts of the United States must draw all reasonable inferences in favor of the nonmoving party, and may neither make credibility determinations nor perform any weighing of the evidence. *Martinez*, 2015 WL 1607391, at *2, *citing, e.g., Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554–55, 110 S.Ct. 1331, 108 L.Ed.2d 504 (1990); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

On cross-motions for summary judgment, the court must consider each motion separately to determine whether either party has met its burden with the facts construed in the light most favorable to the other. *Martinez*, 2015 WL 1607391, at *2, *citing* Fed.R.Civ.P. 56; *see also, e.g., Fair Hous. Council v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir.2001). A court may not grant summary judgment where the court finds unresolved issues of material fact, even where the

Page 8  –  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

parties allege the absence of any material disputed facts.  *Martinez*, 2015 WL 1607391, at *2,

*citing Riverside Two*, 249 F.3d at 1136.

  2.  **No Justiciable Case or Controversy**

  a.  **Plaintiff's Challenge to his July 15, 2015 Exclusion is Moot**

  As a threshold matter, Plaintiff's First Amendment Claims, seeking declaratory and

injunctive relief, are moot, because they do not raise or create an existing controversy.

  In this action, Walsh challenges his 60-day exclusion from City Hall contained in the July

15, 2015 letter attached to his Complaint.  That exclusion from City Council meetings began on

July 15, 2015 and expired on September 15, 2015.  Thus that exclusion has expired, and Walsh is

not currently excluded from City Hall.

  A decision by the court regarding the July 2015 exclusion would have no practical effect

on Walsh's right or practical ability to attend a Portland City Council meeting in person, or to

address the Council pursuant to the applicable rules.  Plaintiff Walsh can currently appear before

the Council and provide testimony without any restriction unique to him or his circumstances.

To the extent Plaintiff Walsh seeks to have this Court review or overturn his July 15, 2015

exclusion, he cannot succeed because that matter is moot.

  The Ninth Circuit articulated the standard for mootness in *Independent Living Ctr. of So.*

*Calif., Inc. v. Maxwell–Jolly*, 590 F.3d 725 (9th Cir.2009):

> This court's jurisdiction under Article III of the United States Constitution
> "depends on the existence of a case or controversy," and "an actual controversy
> must be extant at all stages of review, not merely at the time the complaint is
> filed."  *Preiser v. Newkirk*, 422 U.S. 395, 401, 95 S.Ct. 2330, 2334, 45 L.Ed.2d
> 272 (1975) (citations omitted).  "A claim that has lost its character as a live
> controversy is considered moot, and thus we lack jurisdiction to consider it."
> *Rosemere Neighborhood Ass'n v. EPA*, 581 F.3d 1169, 1172–73 (9th Cir.2009).

*Independent Living Ctr.*, 590 F.3d at 727.  A controversy remains "live" as long as the court can

grant some form of effective relief if the case is decided on its merits.  *Bricker v. TriMet,* 2013

Page 9  –   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

WL 2037123 at *5 (D.Or. 2013), *findings and recommendation approved*, 2013 WL 2036936

(D. Or. May 14, 2013), *citing Independent Living Ctr.*, 590 F.3d at 727.

Nevertheless, in the Ninth Circuit, a party seeking dismissal of a case on the ground of

mootness "bears a heavy burden." *Bricker*, 2013 WL 2037123, at *5-*6, *citing Demery v.

Arpaio*, 378 F.3d 1020, 1025 (9th Cir.2004) (*internal quotation marks, citation omitted*).  The

United States Supreme Court has described the mootness doctrine as flexible in character, noting

justiciability under Article III "is 'not a legal concept with a fixed content or susceptible of

scientific verification.'"  *Bricker*, 2013 WL 2037123, at *5-*6, *citing U.S. Parole Comm'n v.

Geraghty*, 445 U.S. 388, 400–01, 100 S.Ct. 1202, 1211, 63 L.Ed.2d 479 (1980) (*quoting Poe v.

Ullman*, 367 U.S. 497, 508, 81 S.Ct. 1752, 1759, 6 L.Ed.2d 989 (1961)).

Some exceptions to the mootness doctrine have been carved out by the courts.  One of

those is the circumstance where a wrong is capable of repetition, yet evades review.  In such

"exceptional situations, generally only where the named plaintiff can make a reasonable showing

that [s]he will again be subjected to the alleged illegality," the claim does not become moot.

*Bricker*, 2013 WL 2037123, at *5-*6, *citing City of Los Angeles v. Lyons*, 461 U.S. 95, 109, 103

S.Ct. 1660, 1669, 75 L.Ed.2d 675 (1983) (citation omitted).  "The party asserting mootness bears

the burden of establishing that there is no effective relief remaining that the court could provide."

*Bricker*, 2013 WL 2037123, at *5-*6, *citing So. Oregon Barter Fair v. Jackson County, Or.* 372

F.3d 1128, 1134 (9th Cir.2004).

Because Plaintiff Walsh can appear and testify before the City Council pursuant to the

applicable rules at this time, there is no effective relief remaining that the court could provide

regarding Plaintiff's 60-day exclusion from City Hall which ran from July 15, 2015 to September

15, 2015.  To the extent that Plaintiff Walsh invokes the "capable of repetition, yet evading

review" mootness exception, on the basis that Walsh may be subject to exclusion from future

City Council meetings under the Rules of Conduct, Plaintiff must make "a reasonable showing

Page 10  –  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

that he will again be subjected to the alleged illegality." *Bricker*, 2013 WL 2037123, at *6, *quoting Lyons*, 461 U.S. at 109.  Plaintiff is unable to do so in this case.

Any suggestion that this case is capable of repetition must rest on the premise that the City will exclude Walsh from City Council meetings in the future.  The facts demonstrate that Walsh will only be excluded from future City Council meetings if Walsh engages in conduct similar to that on which Walsh's past exclusions were based.  This type of speculative contingency is insufficient to create an existing controversy for purposes of overcoming mootness. *Bricker*, 2013 WL 2037123, at *7, *citing O'Shea v. Littleton*, 414 U.S. 488, 496, 94 S.Ct. 669, 676, 38 L.Ed.2d 674 (1974).

*Bricker* provides instructive analysis.  In *Bricker*, defendant TriMet excluded plaintiff Jennie Bricker from TriMet property for 30 days because Bricker engaged in a loud conversation with a TriMet Inspector on a transit center platform.  2013 WL 20371234, at *1-*2.  TriMet Code provided that no person shall make excessive or unnecessary noise within TriMet property with the intent to cause inconvenience, annoyance or alarm to others.  *Id*. at *2.  Bricker appealed the exclusion to the City of Portland's Hearings Office, and the hearings officer upheld the exclusion.  *Id*. at *3.  Bricker then filed a petition for writ of review in Multnomah County Circuit Court and sought a stay of her exclusion.  Bricker never perfected service of the writ on TriMet.  *Id*. at *4-*5.  Once the 30-day exclusion period had expired, TriMet sought dismissal of the writ of review based on mootness.  Bricker responded by filing a "Complaint and Amended Writ of Review," adding a claim for violation of her First Amendment Rights under 42 U.S.C. §1983 and a claim for declaratory relief under ORS 28.010.  TriMet then removed the case to U.S. District Court.  *Id.* at *5.

The federal court dismissed Bricker's petition for a writ of review as moot.  It found that Bricker's failure to timely serve TriMet with the writ, which consequently prevented a valid stay of the exclusion order, was fatal to Bricker's petition for review.  *Id*. at *7.  Because the

Page 11  – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

exclusion order had expired, there was nothing left for the federal court to review. *Id.* Moreover, the court found that Bricker could not make a reasonable showing that she would be subjected to an exclusion order again. Such an exclusion would only occur if Bricker again violated the TriMet code by making excessive or unnecessary noise on TriMet property. The court found that there was no existing controversy because Bricker's prospect of future injury was a speculative contingency. *Id.*

In the instant action, Walsh is only subject to future exclusions if he engages in disruptive behavior or fails to obey the reasonable directives of a City employee in violation of the City's Rules of Conduct. Plaintiff's assertion of potential future injury thus is a speculative contingency which, under the holding of *Bricker,* is not enough to overcome mootness.

### b.    Plaintiff Lacks Standing to Seek a Declaratory Judgment

Plaintiff Walsh also lacks standing to pursue declaratory relief in this case. For the reasons argued above, Plaintiff's claim is based on hypothetical future events that may never occur. Therefore, Plaintiff has not identified a concrete, particularized injury sufficient to grant him standing to raise a constitutional challenge to the City's Rules of Conduct.

In *Bricker,* the plaintiff argued that she intended to continue commuting on TriMet vehicles and that she had a reasonable apprehension that TriMet would continue to use its regulations to exclude her based on her constitutionally protected statements. Bricker argued that her speech was chilled because of TriMet's enforcement of its exclusion rules, and she asked the court to declare that the exclusion rule was unconstitutional under Oregon's version of the Uniform Declaratory Judgments Act, ORS 28.010, *et seq. Bricker*, 2013 WL 2037123, at *9.

The court ruled that Bricker did not have standing to pursue a constitutional challenge to TriMet's exclusion rule. First, the court laid out the elements of standing under ORS 28.010, *et seq.*:

Page 12  – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The Oregon Supreme Court has described "three related but separate considerations" to determine whether a plaintiff is entitled to seek relief under the Uniform Declaratory Judgments Act:

> The first consideration is that there must be "some injury or other impact upon a legally recognized interest **beyond an abstract interest in the correct application of the validity of a law**." *League of Oregon Cities v. State*, 334 Or. 645, 658, 56 P.3d 892[, 901] (2002).  It is not sufficient that a party thinks an enactment or **a decision of a government entity** to be unlawful.  The standing requirements of ORS 28.020 require that the challenged law must affect that party's rights, status, or legal relations.
>
> * * *
>
> The second consideration is that the injury must be real or probable, not hypothetical or speculative.  As this court explained in *TVKO v. Howland*, 335 Or. 527, 534, 73 P.3d 905[, 908] (2003), "This court consistently has held that courts cannot issue declaratory judgments in a vacuum; they must resolve an actual or justiciable controversy.  To be justiciable, a controversy must involve a dispute based on present facts **rather than on contingent or hypothetical events**."  (Citations omitted.)
>
> * * *
>
> The third and final consideration is that the court's decision must have a practical effect on the rights that the plaintiff is seeking to vindicate....  That is to say, a connection must exist between the rights that a plaintiff seeks to vindicate and the relief requested.  The relief that the plaintiff seeks, if granted, must redress the injury that is the subject of the declaratory judgment action....  Otherwise, the court's decision will amount to no more than an advisory opinion.

*Bricker*, 2013 WL 2037123 at *10, *citing Morgan v. Sisters Sch. Dist. No. 6*, 353 Or. 189, 301 P.3d 419, 2013 WL 179480, at *5 (Or. Jan. 17, 2013) (emphasis in *Bricker*).

Based on the elements of standing, the *Bricker* court held that Bricker had failed to show that TriMet's ongoing enforcement of its exclusion rule was likely to affect her rights, status, or legal relations.  Bricker's apprehension that she might be excluded from TriMet property in the future was speculation that did not present a dispute based on present facts.  The court granted TriMet's motion to dismiss because Bricker lacked standing to bring her declaratory judgment

Page 13  – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

action. *Bricker*, 2013 WL 2037123 at *10; *see also Martin v. City of Boise*, 2015 WL 5708586 (D. Idaho Sept. 28, 2015) (holding that plaintiffs did not have standing to bring a constitutional challenge to city ordinances prohibiting camping and sleeping at night in public places because they could not show that the ordinances would be enforced against them in the future.  The court held that plaintiffs were not facing a concrete, particularized, or imminent injury sufficient to give them standing).

Consequently, Plaintiff Walsh cannot show any of the elements of standing to seek a declaratory judgment regarding the City's use of exclusions:

- A legally cognizable interest in the case beyond an abstract interest in the correct application or validity of the law;
- That the court can resolve an actual or justiciable controversy with a declaratory judgment;
- A connection between the rights he seeks to vindicate and the relief he requests.

In effect, Plaintiff Walsh asks the court to issue an advisory opinion on whether the City's use of exclusions meets First Amendment standards.  The Court may not issue an advisory opinion.  *S. Pac. Transp. Co. v. Redden*, 458 F. Supp. 593, 596 (D. Or. 1978) *aff'd sub nom. S. Pac. Transp. Co. v. Brown*, 651 F.2d 613 (9th Cir. 1980), *quoting Flast v. Cohen*, 392 U.S. 83, 96 (1968) (*quoting* C. Wright, *Federal Courts* 34 (1963)).  ("This case involves the 'oldest and most consistent thread in the federal law of justiciability . . . that the federal courts will not give advisory opinions.'").

        c.        **Plaintiff Lacks Standing to Assert the Rights of Individuals Other Than Himself**

Finally, Plaintiff Walsh lacks standing to assert any claims based on the rights of individuals other than Walsh himself.  Plaintiff's Second Claim for Relief includes the following statements that appear to assert a claim for individuals or organizations other than Plaintiff:

Page 14  – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

- The Mayor and Mr. Enge are using exclusions for future City Council meetings to ban activists from attending or even entering City Hall property for extended periods of time.
- Mayor Hales believes he has authority to exclude activist organizations from future City Council meetings at will (see Attachment 1).
- Since Individuals for Justice is a small watchdog group banning me is banning I.F.J.
- Being present at the City Council meetings is important because we are allowed to comment on each item on the agenda.

(*See docket #2, Complaint, Sec. III "Statement of Claims," pp. 3 and 4*).

Plaintiff Walsh is the only named plaintiff in this action; Walsh appears *pro se*.  For that reason, Plaintiff Walsh lacks standing to assert a claim on behalf of any person or organization except himself.  Parties may plead and conduct their own cases personally in all courts of the United States.  *Dean v. Jones*, No. CV 09-1102-AC, 2010 WL 1873089, at *3 (D. Or. Mar. 2, 2010) *report and recommendation adopted*, No. 09-CV-1102-AC, 2010 WL 1838962 (D. Or. Apr. 30, 2010), *citing* 28 U.S.C. § 1654 (2009).  An individual appearing *pro se* may not, however, represent other individuals in federal court.  *Dean*, 201L 1873089, at *3.  Moreover, constitutional claims are personal and cannot be asserted vicariously.  *Johns v. County of San Diego*, 114 F.3d 874, 876 (9th Cir. 1997), *citing United States v. Mitchell*, 915 F.2d 521, 526 n. 8 (9th Cir.1990).  Thus, a plaintiff who appears *pro se* can only assert his own constitutional claims, and the court should dismiss all claims asserting the rights of individuals or organizations other than Plaintiff Walsh.

### 3.    No Unconstitutional Restriction on Plaintiff's Speech

The First Amendment guarantees the rights to free speech and to petition the government for redress of grievances; such rights are not absolute and may be restricted in certain circumstances.  *Cornelius v. NAACP Legal Defense and Educational Fund, Inc.*, 473 U.S. 788, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985); *Heffron v. International Society for Krishna Consciousness*, 452 U.S. 640, 647, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981).  The U.S. Supreme

Page 15  – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Court has articulated a three-part, forum-based test to evaluate claims of unconstitutional restriction of speech. *Cornelius*, 473 U.S. at 797. A court must determine:

(1)    whether plaintiff's speech is protected by the First Amendment;
(2)    the nature of the forum, whether public, designated (or limited) public, or nonpublic; and
(3)    whether the government's justifications for limiting the individual's speech satisfy the requisite standard.

*Cornelius*, 473 U.S. at 797.

Plaintiff's disruptions of Portland City Council meetings are not, in themselves, speech or petition protected by the First Amendment. City Hall is a limited public forum, wherein the government is permitted by law to enact reasonable time, place and manner restrictions on speech. The City's restrictions, promulgated through the City Code and the City's Rules of Conduct for City Property, are constitutionally valid regulations pursuant to the standards for such regulation set forth in *United States v. O'Brien,* 391 U.S. 367, 376 (1968).

### a.    Plaintiff's Disruptions of City Council Meetings are not Protected by the First Amendment

Plaintiff asserts that the basis for the Court's jurisdiction in this case is the "Constitution of the United States Amendment No, 1 '… and to petition the government for a redress of grievances.'" (*See docket #2, Complaint, p. 3, Item B*). Plaintiff's claims are premised on the assumption that his disruptions of City Council meetings are speech protected by the First Amendment. Plaintiff Walsh's conduct in City Council meetings does not constitute constitutionally-protected speech or expressive conduct, nor legitimate petition for a redress of grievances. Plaintiff's First Amendment claims must therefore fail.

The First Amendment protects not simply the written or spoken word from government interference, but also certain forms of expressive conduct. *Texas v. Johnson*, 491 U.S. 397, 404 (1989). Significantly though, a person's mere subjective intent to express an idea through conduct does not necessarily merit First Amendment protection. *See O'Brien,* 391 U.S. 367, 376

Page 16  – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

(1968) ("We cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea."); *see also Dallas v. Stanglin*, 409 U.S 19, 25 (1989) ("It is possible to find some kernel of expression in almost every activity a person undertakes … but such a kernel is not sufficient to bring the activity within the protection of the First Amendment."). Rather, whether certain conduct warrants First Amendment protection depends on two factors:

> Whether "[a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it."

*Texas v. Johnson*, 491 U.S. at 404 (*quoting United States v. O'Brien*, 391 U.S. at 410-411 (1968).).

Plaintiff frequently testifies on agenda items before the City Council and is generally able to testify without further incident.  It is only when Plaintiff's communications disrupt the ability of others to legitimately address the Council, and for the Council to efficiently conduct the City's legitimate business that he has been excluded from the Council Chambers.  Plaintiff's disruptions, evidenced by yelling, slamming the table, arguing with the Mayor and other Council members, and refusing to cease speaking when instructed to do so (because it is no longer his turn to address the Council), do not carry First Amendment protection.

In *Bush v. San Diego*, 2010 WL 2465034 (S.D. Cal., June 11, 2010), plaintiff sought a temporary restraining order preventing enforcement of San Diego's anti-nudity ordinance prior to an event plaintiff organized, the San Diego Naked Bicycle Ride.  Plaintiff cited a list of messages she intended to convey during the event, including bicycle safety, America's reliance on oil, and use of public nudity to affect social change.  *Bush*, 2010 WL 2465034, at \*1-\*2.  The court denied the temporary restraining order, finding that the fact that plaintiff wanted to ride in the nude was not itself a message, but at most was an amplification of the messages plaintiff intended to convey. That amplification was not expressive conduct protected by the First Amendment.  *Id.*

Page 17  –  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Similarly, Plaintiff Walsh's disruptive behavior here fails as expressive conduct under *Texas v. Johnson, supra*.  Plaintiff's disruptive conduct (i.e., yelling, slamming the table, laying on the floor, interrupting, continuing to speak after his turn is over) does not, by itself, carry a message; rather it is a means of amplifying a message to the City Council.  Yelling, slamming the table, and arguing out of turn with the City Council naturally amplifies a message by inviting and attracting attention and causing the orderly execution of business to stop, while Plaintiff demands to be heard.  That conduct does not advance any particular message; instead, it directly interferes with the government's substantial legitimate interest in conducting an orderly City Council meeting, as well as the interests of other persons permitted to address the Council.

**b.    Portland City Hall is a Limited Public Forum**

City Council meetings, although open to some degree of public participation, are limited public forums and places where city governments conduct their regular business.  *White v. City of Norwalk*, 900 F.2d 1421, 1425-26 (9th Cir. 1990).  In *White v. City of Norwalk*, the Ninth Circuit discussed the reasons why city council meetings have been designated as limited public forums, and the necessity of curbing disruptive behavior at those meetings:

> City Council meetings like Norwalk's, where the public is afforded the opportunity to address the Council, are the focus of highly important individual and governmental interests.  Citizens have an enormous first amendment interest in directing speech about public issues to those who govern their city.  It is doubtless partly for this reason that such meetings, once opened, have been regarded as public forums, albeit limited ones.
>
> On the other hand, a City Council meeting is still just that, a governmental process with a governmental purpose.  The Council has an agenda to be addressed and dealt with.  Public forum or not, the usual first amendment antipathy to content-oriented control of speech cannot be imported into the Council chambers intact.  In the first place, in dealing with agenda items, the Council does not violate the first amendment when it restricts public speakers to the subject at hand.  While a speaker may not be stopped from speaking because the moderator disagrees with the viewpoint he is expressing, it certainly may stop him if his speech becomes irrelevant or repetitious.

Page 18  –  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

> Similarly, the nature of a Council meeting means that a speaker can become "disruptive" in ways that would not meet the test of actual breach of the peace, or of "fighting words" likely to provoke immediate combat.  A speaker may disrupt a Council meeting by speaking too long, by being unduly repetitious, or by extended discussion of irrelevancies.  The meeting is disrupted because the Council is prevented from accomplishing its business in a reasonably efficient manner.  Indeed, such conduct may interfere with the rights of other speakers.

*White*, 900 F.2d at 1425-26 (internal citations omitted). The limited public forum designation extends to the building where the government holds its public meetings.  *See Reza v. Pearce*, 2015 WL 4899122, at *4 (9th Cir., Aug. 18, 2015) (holding that the Arizona Senate building in the state capital was a limited public forum because it was where the government held proceedings concerning the possible enactment of a public law by a governmental institution).

### c.    The City's Restrictions on Speech Before the City Council Meet the Requisite Standards

Even assuming conduct is sufficiently particularized to create a great likelihood that it will be understood by those viewing it -- in other words "sufficiently imbued with elements of communication" to implicate the First Amendment (*see Texas v. Johnson*, 491 U.S. at 406) -- the government may still proscribe that conduct:

> [W]hen "speech" and "nonspeech" elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms.
>
> ****
>
> [W]e think it clear that a government regulation is sufficiently justified if [1.] it is within the constitutional power of the Government; [2.] if it furthers an important or substantial governmental interest; [3.] if the governmental interest is unrelated to the suppression of free expression; and [4.] if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

*O'Brien*, *supra*, 391 U.S. at 376-77.

In *O'Brien*, Mr. O'Brien burned his Selective Service Certificate in violation of federal law on the steps of a courthouse in Boston.  *O'Brien*, 391 U.S. at 369.  O'Brien burned his draft

Page 19  – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

card "in demonstration against the [Vietnam] war and against the draft." *Id*. at 376.  On appeal

of his criminal conviction, O'Brien argued the federal law prohibiting the knowing destruction of

the certificate violated his First Amendment rights.  The Court rejected that argument in adopting

the eponymous four-part *O'Brien* test described above.

*United States v. O'Brien*, 391 U.S. 367, 377 (1968).

Here, the City's Rules of Conduct as applied to City Council meetings are constitutional

because they are:

- legitimate governmental regulations that advance important interests (orderly and efficient operation of Council Meetings),
- unrelated to the suppression of speech (that is, not directed at expression of any particular opinion or viewpoint); and
- only incidentally restrict First Amendment freedoms (alternate methods of addressing the City Council are provided – *see docket #2, Attachment #1, pp. 2-3*).

In this case, Plaintiff cannot show a First Amendment violation because the City's regulations on

speech before the City Council meet the four elements of the *O'Brien* test.

### d.    Time, Place and Manner Regulations

That the City's Rules of Conduct meet first of the four *O'Brien* test elements ("[W]e

think it clear that a government regulation is sufficiently justified if it is within the constitutional

power of the Government;  . . ." see *O'Brien*, 391 U.S. at 377) is inherent in the nature of a City

Council: The Constitution does not grant to members of the public generally a right to be heard

by public bodies making decisions of policy.  *Minn. State Bd. for Cmty. Colls. v. Knight*, 465

U.S. 271, 283 (1984).  The government does not have an affirmative obligation to listen or

respond to individuals' communications on public issues.  *See Minn. State Bd. For Cmty. Colls.*,

465 U.S. at 285 ("Nothing in the First Amendment or in this Court's case law interpreting it

suggests that the rights to speak, associate, and petition require government policymakers to

listen or respond to individuals' communications on public issues."); *see also Smith v. Arkansas

State Highway Employees, Local 1315*, 441 U.S. 463, 465 (1979) ("But the First Amendment

Page 20  – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

does not impose any affirmative obligation on the government to listen, to respond or, in this context, to recognize the association and bargain with it.").

The government does not violate First Amendment speech rights when it bars citizens from exchanging views with legislators in formal settings when opportunities for informal communications also exist. *Minn. State Bd. For Cmty. Colls.,* 465 U.S. at 277 n. 4. Indeed, regardless of the forum of communication, nothing in the First Amendment suggests that the First Amendment requires government policymakers to listen or respond to individuals' communications on public issues. *Minn. State Bd. For Cmty. Colls.,* 465 U.S. at 285. The City therefore has the power to restrict communications from members of the public to promote the orderly flow of governmental business.

The government may impose reasonable time, place, and manner regulations on speech in a public forum, provided the regulations "are justified without reference to the content of the regulated speech, ... are narrowly tailored to serve a significant governmental interest, and ... leave open ample alternative channels for communication of the information." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989), *quoting Clark v. Cmty. for Creative Non–Violence,* 468 U.S. 288, 293 (1984).

The Ninth Circuit has repeatedly held that the government may regulate the time, place, and manner of speech in a limited public forum. *Norse v. City of Santa Cruz*, 629 F.3d 966, 975 (9th Cir. 2010). A council can also regulate the content of speech, so long as the content-based regulations are viewpoint neutral and enforced that way. *Id*; *see also Kindt v. Santa Monica Rent Control Bd.*, 67 F.3d 266, 270-71 (9th Cir. 1995) ("[L]imitations on speech at [city council] meetings must be reasonable and viewpoint neutral...."); regulations that are tailored to restrict speech that causes actual disruptions to a city council meeting are legally permissible. *See Norse*, 629 F.3d at 976 ("We also decline the City's invitation to rewrite the rule announced in [*White v. City of*] *Norwalk*. There, we held that a city's 'Rules of Decorum' are not facially

Page 21  – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

over-broad where they only permit a presiding officer to eject an attendee for actually disturbing or impeding a meeting").

Additionally, both the Supreme Court and the Ninth Circuit have held that the Government may consider listeners' reactions, such as disruptions and controversies that the speech may create, when deciding whether to restrict speech in a nonpublic forum. *Rosebrock v. Beiter*, 788 F. Supp. 2d 1127, 1139 (C.D. Cal. 2011) *aff'd sub nom. Rosebrock v. Mathis*, 745 F.3d 963 (9th Cir. 2014), *citing Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 806, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985). The Supreme Court has held that the mere possibility of disruptions and controversies is sufficient justification to deny access to a nonpublic forum. *Rosebrock*, 788 F. Supp. 2d at 1139, *citing Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 52 n. 12, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983) ("[T]here is no showing in the record of past disturbances ... or evidence that future disturbance would be likely. We have not required that such proof be present to justify the denial of access to a non-public forum on grounds that the proposed use may disrupt the property's intended function."); *but see Norse v. City of Santa Cruz*, 629 F.3d at 979 (9th Cir.2010) ("Even in a limited public forum like a city council meeting, the First Amendment tightly constrains the government's power; speakers may be removed only if they are actually disruptive.") (Kozinski, J., concurring). The Supreme Court also has recognized that content-based restrictions by the Government may be reasonable in order to minimize "the appearance of favoritism, and the risk of imposing upon a captive audience." *Rosebrock*, 788 F. Supp. 2d at 1139, *citing Lehman v. City of Shaker Heights*, 418 U.S. 298, 304, 94 S.Ct. 2714, 41 L.Ed.2d 770 (1974).

Defendants here do not anticipate that Plaintiff Walsh disputes that his conduct caused disruptions to City Council meetings on the dates referenced in the three Exclusion Notices. To the extent that Plaintiff does dispute that assertion, video evidence of each incident taken at the City Council meetings along with accompanying reports written by security personnel on duty

Page 22  –  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

during those incidents show that Plaintiff's actions caused actual disruptions to the City Council meetings.  *(See Le Declaration, Exhibit A).*

### e.        City's Substantial Interest in Preventing Disruptions at Meetings

The Office of Management and Finance ("OMF"), through the OMF Bureau of Internal Business Services, has the authority to manage city owned property assigned to OMF property management and administration under Portland City Code 3.15.020. Part of that function includes development and to enforce the rules of conduct for City buildings. PCC 3.15.020 also provides that Persons in Charge may exclude any person who fails to comply with the Rules of Conduct for City Buildings ("Rules of Conduct"). (*See Enge Declaration, ¶3, Exhibit A).*

On January 1, 2013, Defendant Mayor Hales specifically granted former Chief Administrative Officer Jack Graham and Director of Internal Business Affairs Bryant Enge with the authority to develop and enforce the Rules of Conduct for all City properties, including City Hall.  This authority included enforcement of the Rules of Conduct by means of exclusions from City of Portland properties for periods of time.  (*See Enge Declaration, ¶6-9, Exhibits C, D*).  Defendant Mayor Hales has designated Bryant Enge as an authorized person in charge of City-owned facilities to issue exclusions.  (*See Enge Declaration, ¶8-9, Exhibit D*).

The Rules of Conduct became effective on August 12, 2013 (*see Enge Declaration, ¶¶10-11, Exhibit E*).  The Rules of Conduct are posted at the public entrance to City Hall.  (*See Enge Declaration, ¶¶12-15, Exhibits F, G*).

The July 15, 2015 Exclusion Notice says that Plaintiff violated Rules of Conduct 5 and 6 during the City Hall incidents.  The full text of those rules provides:

> 5.  No person shall engage in conduct that disrupts or interferes with the normal operation or administration of City business, its tenants, employees, visitors or customers, or any City permitted activity.  Examples of prohibited conduct include but are not limited to: disorderly conduct; harassment; intimidation; aggressive solicitation of money or other items of value; fighting or provoking a fight; unreasonable noise; conduct which threatens or endangers the health, safety

Page 23  – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

or well-being of any person; or loud or boisterous verbal or physical behavior that
reasonably would expect to cause disruption, alarm of fear; climbing or sitting on
fences, railings, window sills and other structures erected upon City Properties.
These prohibitions include conveying harassing or threatening communications
through the City's telecommunication systems.  Signs, posters and banners are not
allowed into the interior of City Properties if in excess of 8 ½" X 11" in size.
(Note: this does not preclude materials used for presentations or authorized
events.)

6.  No person shall disobey the reasonable direction of a City employee, law
enforcement, person in charge or security officer, or posted City signage.  A
direction is reasonable if it directs a person to obey, or to cease a violation of, any
law, rule or regulation applicable to City Properties, or if it is otherwise
reasonably related to protection of the health, welfare or safety of the person or of
any other persons at City Properties or to the prevention of damage to property, or
if it is reasonably necessary to preserve the peace or to prevent the disruption of
any activity or permitted event or activity at City Properties.  In a designated
Sound Buffer Zone, Facilities Services will request users reduce the noise volume
and move permissible activities away from adjacent windows.

(*See Enge Declaration, Exhibit E, Items 5 and 6*).  The Rules of Conduct also provide the

number of days a person who violates the Rules of Conduct can be excluded from City property:

Persons who violate Rules 3-19 may be given up to one warning at the discretion
of the "Person in Charge", and then may be asked to leave the City of Portland
properties for 24 hours.  Subsequent violations by that person of any Rule 3-19,
may result in that person's immediate exclusion from City Properties for a period
of 24 hours, three months, six months, one year or permanent exclusion when
determined in the best interest of the City of Portland.  The "Person in Charge"
will determine what period of exclusion is warranted.

For purposes of ordering persons to leave City property due to violations of the Rules of

Conduct for City properties, each Commissioner in Charge is authorized to designate "persons in

charge" of City property within the Commissioner's assigned bureaus, and delegate authority to

act on behalf of the Commissioner.  (*See Enge Declaration, ¶4, Exhibit B*). Mayor Hales is the

Commissioner in charge of properties under the management of OMF, including the interior and

all exterior areas surrounding City Hall. (*See Enge Declaration, ¶5*).   Pursuant to his authority

as the Commissioner in Charge, Mayor Hales designated Bryant Enge as the person in charge to

Page 24  – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

enforce the Rules of Conduct and to issue exclusions to persons who violate the Rules of Conduct (*see Enge Declaration, ¶¶8-9, Exhibits D, J*).

Additionally, Portland City Code provides procedural rules for public input at City Council meetings.  The Rules of the Council state that if a member of the public requests to speak to Council, the requester will be given three minutes to testify on the Regular Agenda but may also submit written materials before or at the meeting.  PCC 3.02.040(E)(4).  Members of the public are also allowed to testify on the first reading of an item for three minutes per person unless time limits have been otherwise specified.  PCC 3.02.040(G)(6).  The City Council also uses a Consent Agenda to expedite certain matters by making them not subject to amendment or debate.  PCC 3.02.036(E).  Any individual, including members of the public, may make a written or verbal request to remove an item from the Consent Agenda and place it on the Regular Agenda, thereby making the item subject to public comment.  PCC 3.02.036(D).

The Mayor is designated as the presiding officer of the Council unless he is absent.  PCC 3.02.040(C)(1).  The presiding officer has the duty of preserving order and decorum at the Council meetings, and the presiding officer sets limits for public testimony.  PCC 3.02.040(F)(1)(a); PCC 3.02.040(F)(2)(b).  Public testimony shall be limited to the first reading of any type of ordinance unless otherwise stated on the record by the Presiding Officer at the end of the public testimony on the first reading.  PCC 3.02.040(F)(4)(b).

At the beginning of every City Council meeting, Mayor Hales states the rules of decorum for the City Council meeting.  *(See Moore-Love Declaration, ¶12, Exhibit B, p. 6, Exhibit C, p. 7, Exhibit D, pp. 4-5, Exhibit E, p. 7, Exhibit F, p. 7)*.  Thus, at the beginning of each City Council meeting, Mayor Hales notifies all attendees that three minutes are allotted for each public testimony.  Mayor Hales also notifies all attendees that disruptive behaviors will lead to a recess of the Council, during which the disruptive individual will be removed.

Page 25  – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The Mayor's discretion as presiding officer to limit public testimony to non-disruptive communication that addresses only the subject at hand is necessary to preserve the decorum and the efficient, orderly processing of City business at City Council meetings. The Rules of Conduct, Portland City Code, and the City's regulations governing exclusion from City property are valid exercises of the City's authority to establish reasonable time, place and manner restrictions on speech in a limited public forum.  The Rules of Conduct are viewpoint-neutral, and permit exclusions only when a speaker disrupts or interferes with the normal operation of City business.

      **f.**    **The City's Time, Place and Manner Regulations are Unrelated to the Suppression of Speech**

A statute that restricts speech only when it is disruptive because of its manner, not its content, is an example of content-neutral regulation that has been affirmed time and again. *Center for Bio-Ethical Reform, Inc. v. Los Angeles County Sheriff Dept.*, 533 F.3d 780, 790 (9th Cir. 2008).  The City's Rules of Conduct only proscribe conduct that "disrupts or interferes with the normal operation or administration of City business, its tenants, employees, visitors or customers, or any City permitted activity."  (*See Enge Declaration, Exhibit C, Item 5*).

The Ninth Circuit and the U.S. District Court of Oregon have upheld regulations that are substantially similar to those established by Portland City Code and the Portland Rules of Conduct.  In *Mead v. Gordon*, 583 F.Supp.2d 1231 (D. Or. 2008), plaintiff Dorothy Mead was excluded from several public buildings in Washington County after she yelled at then-Circuit Court Judge Hernandez from the gallery during a hearing in Washington County Circuit Court. After a Washington County sheriff's deputy escorted Mead from the courtroom, Mead continued to confront the deputy and behave in a disruptive matter.  *Mead*, 583 F.Supp.2d at 1235.

Washington County's exclusion process as described in *Mead* was comparable to the City's.

Page 26  – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The records of the Board of County Commissioners of Washington County reveal that "on-going concerns about safety and security" in county buildings and the lack of a uniform policy for removal of disruptive individuals prompted the Board's decision to adopt a policy for trespass on county-owned property.  The policy provides that individuals are subject to immediate exclusion if the person engages in 1) disorderly, boisterous, riotous or violent conduct; 2) unreasonably loud, disturbing or unnecessary noise; 3) disorderly or riotous assemblies; 4) disruption of lawful meetings; 5) abusive or offensive language; 6) drunken or offensive conduct; or 7) "conduct that is otherwise disruptive to the efficient functioning of government affairs."

> The Board bestowed authority on the County Administrator to exclude individuals from county facilities, who then delegated that authority to the Washington County Sheriff. Sheriff Rob Gordon issued a Jail Division Temporary Division Order 2006-11, which authorized court security deputies to exclude individuals from county property.  The order directs the sheriff's deputy to fill out a Notice of Exclusion form, have it reviewed and signed by a court security sergeant or corporal and distribute it to the person it excludes and to court personnel.  The Washington County Sheriff's Office does not provide formal training on the exclusion of individuals from its facilities.  Sheriff Gordon had no personal knowledge or participation in Mead's exclusion.

> The Notice of Exclusion form includes the conduct that led to the exclusion, the duration of the exclusion and the courthouse locations it covers. It also states, "If you wish to appeal this decision, you may file a writ of review with the Washington County Circuit Court."  Mead's Notice of Exclusion lists "interfering with court business," "unreasonable noise," and "disrupting court" as the reasons for her exclusion.  The Notice excluded Mead from county facilities that contained courtrooms, including the Old Courthouse, the Justice Services Building, the Juvenile Services Building and the Law Enforcement Center, which also houses the Washington County Jail.

*Mead,* 583 F.Supp.2d at 1235-36.  In addition, the notice of exclusion indicated that "an excluded individual cannot enter any building covered by the notice unless that person is 1) appearing in her own matter; 2) has legal authority to appear in a matter for someone else; or 3)

Page 27  –  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

has a prearranged, verifiable meeting with someone in the building." *Mead,* 583 F.Supp.2d at 1237.

USDC Oregon Magistrate Judge Papak had "no difficulty concluding that the restriction was reasonable." *Mead,* 583 F.Supp.2d at 1243. Although the exclusion order banned Mead from observing state court proceedings in Washington County for one year, Mead had disrupted a hearing by refusing to remain quiet after repeated warnings from the judge. *Mead,* 583 F.Supp.2d at 1243. Thus, her physical presence in the courtroom during proceedings posed a threat of additional disruptions. Moreover, even though Mead could not physically be present in the courtroom, Mead could ascertain what had transpired during court proceedings from court transcripts, newspaper reports, or accounts from others who attended. *Mead,* 583 F.Supp.2d at 1243. Magistrate Papak concluded that the restriction did not violate Mead's First Amendment right of access to court proceedings.

Although *Mead* was decided under the standards applicable to nonpublic forums (i.e. restrictions on access must be 1) reasonable in light of the purpose served by the forum, and 2) viewpoint neutral), the court's reasonableness analysis applies to the City's regulations on City Council access in this case. Like Washington County, the City has created a policy for excluding disruptive individuals from City buildings based on public safety concerns. Like *Mead*, Plaintiff Walsh's continued presence at City Hall, where he has a demonstrated history of disrupting governmental business, poses a threat of additional disruptions. Like Mead's exclusion from being physically present at court proceedings, Walsh still has the ability to communicate with the City Council despite not being able to address them orally and directly at the specific time the City Council debates an agenda item. (*See docket #2, Complaint, Attachment #1, p. 2, Item 7*).

In *Kindt v. Santa Monica Rent Control Bd.*, 67 F.3d 266 (1995), the Santa Monica Rent Control Board allowed three minutes for speakers from the public to address the Board at the end of each meeting. *Kindt,* 67 F.3d at 268. The Board's Rules of Decorum provided for the

Page 28  – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

removal of individuals who disrupted meetings. *Kindt,* 67 F.3d at 269. Albert Kindt, a frequent participant in those meetings, was ejected from the meetings on occasion for disrupting the Board's process when he objected to only being allowed to speak at the end of the meeting. *Id.* at 268-69. Kindt filed a First Amendment challenge to the Board's rules under 42 U.S.C. 1983, arguing that the restriction of his allowed testimony to three minutes at the end of each meeting deprived him of speech. *Id.* at 267, 271.

The Ninth Circuit held that the Board regulations restricting public commentary to three minutes per item at the end of each meeting were the kind of reasonable time, place and manner restrictions that preserved a public board's legitimate interest in conducting efficient, orderly meetings. *Kindt,* 67 F.3d at 271, *citing City of Madison, Joint Sch. Dist. No. 8 v. Wisconsin Employment Relations Comm'n*, 429 U.S. 167, 175 n. 8, 97 S.Ct. 421 50 L.Ed.2d 376 (1976) ("Plainly, public bodies may confine their meetings to specified subject matter."). Further, the *Kindt* court held that it was not a First Amendment violation for the Board to restrict public testimony to the end of the meeting after the Board had already voted on its resolutions. *See Kindt*, 67 F.3d at 271 ("The vice is that the Board passed resolutions before it heard from the general public. That is not a violation of the First Amendment.").

Kindt was never denied an opportunity to speak, and was not silenced when he addressed personally derogatory remarks to individual Board members. He was only ejected from the board meetings when he disrupted the proceedings by yelling and trying to speak when it was not time for his testimony. *Kindt*, 67 F.3d at 271. The Ninth Circuit held that there was no genuine issue of material fact as to whether the Board denied Kindt his First Amendment rights, and affirmed the District Court's grant of summary judgment in favor of the Board:

> Nothing indicates that Kindt was prevented from speaking his mind on his chosen topics. Indeed, the Board's members regularly endured Kindt's philippics and, essentially, restrained him only when he abandoned all sense of decorum. That is not the stuff that First Amendment violations are made of.

Page 29  – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

*Kindt,* 67 F.3d at 272-73.

        **g.**    **The Incidental Restriction on Plaintiff's Speech is No Greater than that which is Essential to Protect the City's Interest in Preventing Disruptions**

In *Reza v. Pearce*, 798 F3d 881 (9th Cir. 2015), the Ninth Circuit clarified the limits of the government's ability to restrict speech in the public forum. Plaintiff Reza attended a legislative hearing at the Arizona State Senate Building, where he viewed the hearing from an overflow room. *Reza*, 2015 WL 4899122, at *1. During the hearing, Reza and others applauded and booed in the overflow room during the course of the hearing. *Id.* Following the hearing, State Senator Russell Pearce directed building security to bar Reza from the building indefinitely due to Reza's behavior during the hearing. *Id.* at *1-*2. When Reza attempted to enter the building two days later to meet with a different Senator to discuss obtaining a permit for future protests, security personnel arrested Reza for trespassing. *Id.* at *2. Reza then filed a §1983 action alleging that Pearce violated his First Amendment rights by barring him from the Senate Building. *Id.* at *3.

The Ninth Circuit reversed the District Court's grant of summary judgment in favor of Senator Pearce because it found that fact issues remained whether Reza's expressions in the overflow room actually disrupted the hearing, and whether Pearce had legitimate concerns that Reza would interrupt future legislative debates if Reza were allowed back into the building. *Id.* at *5-*6. The court held that Senator Pearce's complete, indefinite bar on Reza's entry into the building exceeded the bounds of reasonableness as a response to a single act of disruption. *Id.* at *6. The *Reza* court characterized Senator Pearce's actions:

> Here, the senator did not submit sufficient evidence showing that Reza posed a threat to the public safety. Instead, we are required to infer that Reza was a threat based only on the tense environment that existed in Arizona at the time of the protest. That is not enough, especially given that Senator Pearce took an extreme action, barring Reza from the Senate building completely. Additionally, it is

Page 30  –  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

unclear how the risk that Reza posed justified a ban that initially extended for an indefinite period.  At the very least, Senator Pearce had several less restrictive alternatives open to him, including barring Reza from certain rooms in the Building or for a shorter period of time.

*Reza*, 798 F3d at 9.  In the instant case, the City of Portland's exclusion of Plaintiff Walsh is more analogous to the situation the Santa Monica Rent Control Board faced in *Kindt* than that faced by Senator Pearce in *Reza*:

- First, the attached evidentiary record shows that Plaintiff Walsh engaged in conduct that actually disrupted multiple City Council meetings before the July 8, 2015 meeting and the 60-day July 15, 2015 exclusion at issue in this action.  Meetings were delayed or recessed so that Walsh could be removed from the Council chamber and the Council could proceed with its business.  Disruptions caused by Walsh are substantial, infringe on the rights of other individuals to address the City Council, and incite other individuals to disrupt Council proceedings.  (*See Le Declaration, Exhibit A.*)

- Second, the documented pattern of behavior displayed by Walsh at multiple City Council meetings demonstrates an ongoing possibility that Walsh will disrupt future City Council meetings when present.

- Finally, the exclusion applied to Walsh by the City is less restrictive than the indefinite ban enacted by Senator Pearce in *Reza*.  The exclusion is for a definite period of time, excludes plaintiff only from forums where he has caused disruptions, and allows alternative methods of communication with the Council.

Walsh was excluded for 30 days in September 2014, for 30 days in May 2015, and for 60 days in July 2015.  Notice that the City can exclude a person for those periods is given in the Rules of Conduct, which provides:

> Persons who violate Rules 3-19 [*including Rule 5, concerning disruptive conduct, and Rule 6, concerning following the reasonable directions of City employees*] may be given up to one warning at the discretion of the "Person in Charge" and then may be asked to leave the City of Portland's properties for 24 hours.  Subsequent violations by that person of any Rule 3-19, may result in that person's immediate exclusion from City Properties for a period of 24 hours, three months, six months, one year or permanent exclusion when determined in the best interest of the City of Portland.

(*See Enge Declaration, Exhibit E, p. 1*).  Moreover, each exclusion letter advised Walsh that if he engaged in further disruption of the Council following the expiration of the term of exclusion,

Page 31  – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

future exclusions were likely to be for a significantly longer period of time. (*See Enge Declaration, Exhibits H, I, J*). The City therefore gave Plaintiff prior notice of the time frame for which he could be excluded and the underlying rationale for the exclusion.

Walsh was reasonably excluded from City Council meetings conducted after the meetings which Walsh actually disrupted and obstructed. Exclusion from discrete areas for discrete periods of time is a commonly used security technique. *See Bricker,* 2013 WL 2037123 at *2; *see also City of Norwalk,* 900 F2d at 1423-24; *Mead,* 583 F.Supp.2d at 1236-37; *Reza,* 798 F3d at 885-86.

Walsh was not excluded from entry into all City buildings; rather, he was excluded from the area in or around City Hall. Exclusion from City Hall reflects Walsh's disruptive conduct both in the Council Chamber during the July 8, 2015 meeting, and his conduct when he confronted a City Hall staff member (Mayor's Chief of Staff Alpert) outside the Council Chamber (*see Le Declaration, Exhibit A, video entitled "cc070815" at 01:59:12-02:00:28; see also Enge Declaration, Exhibit H; Wood Declaration, ¶¶18-19, Exhibit E; Chandler Declaration, ¶¶14-16, Exhibit D*). Because Walsh continued his conduct until he left City Hall, the most recent exclusion barred Walsh from entry into the City Hall building (*see docket #2, Complaint, Attachment #1, pp. 1-2*).

Walsh continued to enjoy alternative means to address the Council or conduct business at City Hall even after he was excluded from being physically present in City Hall. The July 2015 Exclusion Notice advised Walsh of alternative means of observing live City Council meetings online, and provision of written testimony to the City Council Clerk prior to the City Council's meeting dates. *(See docket #2, Complaint, Attachment #1, p. 2, Item 7)*. Plaintiff retained ability to conduct business at City Hall by appointment at different meeting locations. *(See docket #2, Complaint, Attachment #1, pp. 2-3, Item 8)*. Walsh's exclusions created only one restriction: Walsh was not allowed to physically appear and testify in person on a City Council agenda item

Page 32  – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

at the exact time and place that the item was taken up by the Council in a meeting. The exclusion was therefore narrowly tailored to only exclude Plaintiff from the areas where he had caused disruptions to City Council business, and left ample room for Plaintiff to provide his viewpoints through alternative means.

Plaintiff's exclusion was not based on the content of his speech. His exclusion was based on the fact that his conduct caused disruptions to Council meetings. The length of the exclusions was designed to prevent repeat performances by Walsh, and to provide for the orderly process of Council business by the Council and other attendees.

The City has valid authority under Portland City Code 5.36.115 and the Mayor's role as moderator of a limited public forum to exclude persons who are disruptive during City Council Meetings from the City Council Chambers. The City issued the July 2015 exclusion, as well as the May 2015 and September 2014 exclusions, to Plaintiff Walsh pursuant to that valid authority, and those exclusions are justified based on Walsh's documented history of disruptive behavior.

### III.  CONCLUSION

Plaintiff's challenge to his July 2015 exclusion is moot because the exclusion period has expired. The case does not fall into the "capable of repetition yet evading review" exception to mootness because Plaintiff has alleged a specific injury that will result in the future.

Plaintiff lacks standing to request a declaratory judgment from the court, because he has not alleged a concrete, particularized injury or a dispute that the court could resolve through issuing a judgment.

Plaintiff lacks standing to represent the interests of any person or entity except himself.

Defendant City has placed valid time, place and manner regulations on speech within City Hall, a limited public forum. These regulations are viewpoint neutral and narrowly tailored to only exclude individuals whose conduct actively disrupts the orderly process of legitimate City business. Plaintiff was excluded because he intentionally disrupted legitimate City business

Page 33  – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

in violation of the City's neutrally enforced Rules of Conduct.  The City's use of exclusions in such circumstances complies with First Amendment standards.  Plaintiff fails to state a claim for relief because he has not shown that the City violated his First Amendment rights.

The court should grant the City's motion for summary judgment and dismiss Plaintiff's claims with prejudice.

DATED:  October 30, 2015.

Respectfully submitted,

*/s/ Dan Simon*
DAVID LANDRUM, OSB #955425
Senior Deputy City Attorney
DANIEL SIMON, OSB #124544
Assistant Deputy City Attorney
Telephone: (503) 823-4047
Attorneys for Defendants

Page 34  – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing DEFENDANTS' MOTION FOR SUMMARY

JUDGMENT on:

>       Joseph F. Walsh
>       7348 SE Division Street
>       Portland, OR  97206
>               *Plaintiff-Pro Se*

on October 30, 2015, by causing a full, true and correct copy thereof, addressed to the last-

known address (or fax number) of said attorney, to be sent by the following method(s):

☒       by **mail** in a sealed envelope, with postage paid, and deposited with the U.S. Postal
        Service in Portland, Oregon.

☐       by **hand delivery.**

☒       by **email** pursuant to LR 5-2(b).

☐       by **facsimile transmission.**

☐       by **email.**

>                              */s/ Dan Simon*
>                              DAVID LANDRUM, OSB #955425
>                              Senior Deputy City Attorney
>                              DANIEL SIMON, OSB #124544
>                              Assistant Deputy City Attorney
>                              Telephone: (503) 823-4047
>                              Attorneys for Defendants

Page  1  –  CERTIFICATE OF SERVICE