RECEIVED

NOV 23 2015

City Attorney's Office

**CASE NO 3:15-cv-01666-SI**

Individuals For Justice
Joseph Walsh, representative
E-mail: lonevet2008@comcast.net
Phone: 503-946-8428



**RESPONSE TO THE CITY'S BRIEF CONCERNING THEIR MOTION FOR SUMMARY JUDGMENT.**

**CASE NO. 3:15-cv-01666-SI**

       UNITED STATES DISTRICT COURT
       DISTRICT OF OREGON
       PORTLAND DIVISION

**JOSEPH WALSH**

       **PLAINTIFF,**

**BRYANT ENGE, CHARLIE HALES,
CITY OF PORTLAND, et all**

       **Defendants.**

Exhibit 1
Page 1 of 12

## Motion by the city for Summary Judgment:

The motion offered by the city of Portland is without merit because the entire document never answers or offers any authority who would grant the city to arbitrarily stop a citizen/activists from exercising one of our basic rights; "...petition the Government for a redress of grievances."

The city spends a great deal of their brief on making me out to be a terrible person who acts up and causes such confusion that I must be kept out of future public meetings of the city council. The escalation of punishment is most distressing and has a chilling effect on those who wish to speak at meetings but fear if they get into an argument with this mayor they too will be banned for a time to be decided by the mayor. There are no instructions that we can point to limiting the powers of the mayor.

## Legal Argument By The City:

There are major disputes concerning every aspect of this case and can only be brought out if the case proceeds. The attack on my activism will be responded to by witnesses who will testify of my long and dedicated work concerning the issues that come before this council. Because the city says I acted in such a way does not make it so, the witnesses they offer are all paid city employees or contractors as in the case of G4S security. We would offer counter witnesses who are not paid, to testify to the selective enforcement of the "Code of Conduct." We would also offer some rational reason for the presentation to the mayor that he has some obligation to conduct the meetings as outlined by the City Charter. If there is no way but to interrupt illegal proceedings a jury might want to know that.

The First Amendment does not say one must petition our government only during times that the government dictates, that is left up to courts to decide if the interruption of the process is wanted or expected. In this case the catalyst for my 60 day exclusion was both wanted and expected. There was no way of redoing the item pulled by me if the session was completed, the

Exhibit 1
Page 2 of 12

money was going to be spent and once that happened it was over. Even if one decides that my action was out of order, and/or impolite, is that enough to ban me from all services offered in the City Hall Building? Again we are not arguing that the mayor may be justified when he had me removed from the Chambers, we are only challenging the 60 day exclusion or banning. We also take issue with the concept of "Mootness." The city does not use this concept anymore and we suggest it is partly based on my first exclusion dated September 17, 2014 and appealed to the City's Hearing Officer. This had to do with an Appeal Hearing during a city council meeting on September 10, 2014 concerning a Hemp Festival permit rejection by the bureau known as Parks and Recreation. I objected that the permit was refused and thought the festival was being treated unfairly. I was thrown out, not arrested, and one week later told I was banned from the city hall chambers for 30 days. I appealed, and the decision of the Hearing Officer was based on mootness. Attached (att. 1) is an e-mail from the Auditor's Office that says they will not use mootness as an end result of hearings.

My appeal was never heard because the city ran the clock out and then said in effect "You are moot." (See hearing officer decision, Att. 2) So, there was never any possibility of me getting a hearing on the first 30 day exclusion. The Hearing Officer is paid by the city, seems like the deck was loaded at the time of my appeal of my first exclusion. There was no real appeal; one was at the mercy of the city. There are some cases that speak to this issue: one must have a fair hearing to obtain whether the mayor has over reached his authority, and if he has what limits are there on his powers to punish what he/she considers bad behavior. We do not have dictators yet in this country and all elected officials must have limits on their powers; we believe in due process.

## DUE PROCESS:

We take the position that when a liberty is taken away by the government there must be a fair hearing and appeal process. The City of Portland cannot show that they had a compelling reason to ban me for 30 or 60 days. There were no arrests, I was ordered out of the council chambers and complied. So where is the compelling need to keep me from exercising one of our basic rights? The interruptions of council business was not just me objecting vigorously, there were others who actually led the demonstrations

Exhibit 1
Page 3 of 12

yet only I was pointed out for exclusion. This to us is a planned punishment for our organization where others were either visibly warned or received no warning at all. The city of Portland is well aware that I do represent Individuals For Justice at every city council meeting I attend because I declare that at the beginning of my testimony. The fact that the city's security force, called G4S, documents every action that I take during council meetings is disturbing on its face and should stop.

In HAGUE v. COMMITTEE FOR INDUSTRIAL ORGANIZATION, (1939) The Supreme Court affirmed the lower courts in stating the government cannot just decide to ban an organization from using government property to gather and hand out information about joining a union. The city in that case did what this city is trying to do by saying they have the power to stop citizens from gathering. Individuals For Justice was stopped for a total of 120 days, missing about 17 meetings. This is a very serious action by the city and they offer no authority except listing every minor disturbance, hoping the total is greater than the parts, they are not. The city exercised a tool to deal with disturbances when they removed me from the meetings in question but exceeded any authority they have when, a week later, they added extended exclusions as in this instance of 60 days, not just banished from the meetings but from using any facility inside city hall. The Mayor has no authority over the Auditor's functions yet barred me from using that office.

This case is a clear picture of the abuse of authority and we submit it is based on the council, including the mayor's intended exclusion of opposing opinions when it comes to actions taken by the city.

In their motion, the city states "...there is no justifiable case or controversy before the court." We beg to differ, depriving a citizen of a constitutional right is surely controversial and justifiable by countless court decisions concerning protective rights. The First Amendment is not without restrictions, we acknowlege the privledge of speech is surely limited by the courts and the government has a duty to conduct business in an organized way, we accept that principle; but how far the mayor can go is the question we present to the court. Removal from a meeting should be enough and future exclusions should not be part of the tools for the mayor to use at will. This is not riding a Trimet train, being caught without a ticket and being excluded for a time, this is loss of a basic right to petition local government

Exhibit 1
Page 4 of 12

as covered under "Oregon Public Records Law." The brief offered by the city is only one side and the videos are lacking in evidence in that we would call witnesses to dispute what the videos shows and offer some context to what is on just selected sections offered by the city. There is no reason given for my actions and that we challenge, just because the city says something does not make it so. We take the position that my actions did not happen in a vacuum and to document all my actions including obvious legal and protected rights outside of city hall just adds to the attempt by the city to make me the issue and not the city abusing their power.

## Grounds For Summary Judgment:

The city contends that "...disruptive conduct at city council meetings is not conduct protected by the First Amendment." We see this conduct not as disruptive but necessary. We are reminded of the well known example or exception to freedom of speech when a person yells "Fire" in a crowded theater, we as reasonable people say one cannot do that because of the danger of people getting killed or hurt trying to get out of the theater. But suppose there is a fire; what does the same person do?

The fire on July 8th of 2015 was caused by the mayor calling up an agenda item that I had requested be pulled when I was out of the room. This matter had to do with transferring funds from the Transportation Bureau to the Police Department. We were opposed to that transfer and wanted to go on record to list our opposition. The City Charter lays out that an item pulled out of Consent Agenda will be heard after a vote on the rest of the Consent Agenda. (see att. 3)

The mayor decided not to do that and we waited over 2 hrs for him to bring up the item. I had to use the restroom due to an illness called ulcerative colitis and left all my belongings, including an oxygen backpack, at my disabled chair which is in the first row in front of the mayor. I had notified the mayor of this medical condition on a number of occasions. I was told when I returned that the item was voted on and there was nothing I could do. I yelled out because there was no way that they could have a report from staff on this issue and vote. I was later told that the mayor decided that since I was not in the room there was no need for a staff report to the council and called for a vote. If the mayor followed the city charter

Exhibit 1
Page 5 of 12

and brought up the item after the Consent Agenda was voted on I would have been present, but he decided to bring it up 2 hrs later when I was out of the room; there was a "Fire."

**Material Facts:**

The material facts in this case are that the city is arguing that because they can remove me from a meeting, where I may be out of order, they have the power to do anything else they please.

**Conclusion:**

We take the position that the mayor, Mr. Bryant Enge, and the City of Portland acted as dictators and have offered no defense concerning my 60 day exclusion. We ask that the case proceed to a hearing scheduled for December 17, 2015 without delay.

Respectfully submitted,

*[signature]*

Joseph Walsh,
Individuals For Justice,
Vietnam Veterans Against the War,
Activist

Exhibit 1
Page 6 of 12

XFINITY Connect: RE: "Mootness" in cases before the hearing officer                    https://web.mail.comcast.net/zimbra/mail?app=mail#2



Hello, JOE
Sign Out

Email   Search

Email   Voice   Address Book

**Mailboxes**                  Close   New   Get Mail

Inbox (1667)             **RE: "Mootness" in cases before the hearing officer**
Sent                     Sent By: City Auditor, Mary Hull Caballero   On: Nov 11/03/15 1:04 PM
Drafts                                  To: joe walsh
Spam
Trash                    Mr. Walsh,
                         I checked in with Greg Frank to discuss your question and learned the following:
actblue
Aipac suit               In July, the Oregon Supreme Court issued a decision in *Couey v. Atkins* (357 Or 460 (
barbara white paper      exclusion cases.
beauty
calenda                  For many years courts deferred to an Oregon Supreme Court case originating from
canidates 2              *Shatzer*, 337 Or 345 [2004]). The Oregon Supreme Court, in *Yancy*, held that a case
exclsion                 courts persisted in following *Yancy* even though the Oregon legislature later passed
fluride                  person had standing if the person's case involved an act that was "capable of repeti
horses
                         The Oregon Supreme Court's decision in the *Couey* case overruled *Yancy*.

                         Regards,
                         Mary Hull Caballero


                         **From:** outlook_025a23a1fc539a45@outlook.com [mailto:outlook_025a23a1fc539a4
                         **Sent:** Sunday, November 01, 2015 1:45 PM
                         **To:** City Auditor, Mary Hull Caballero <AuditorHullCaballero@portlandoregon.gov>

© 2015 Comcast Cable Communications        Privacy Statement        Terms of Service

PROMOTIONS

Capital One

Fee-free 360 Savings
Earn up to a $500 bonus
Great everyday interest
Online & mobile access

Ad Info   Ad Feedback

Exhibit 1
1 of 1                                                                                                          Page 8720 12:57 PM



# CITY OF PORTLAND

Office of City Auditor Mary Hull Caballero

**Hearings Office**
1900 SW 4th Avenue, Room 3100
Portland, OR 97201
phone: (503) 823-7307 - fax: (503) 823-4347
web: www.portlandoregon.gov/auditor/hearings



Att #2

## HEARINGS OFFICER'S SUPPLEMENTAL ORDER

### APPEAL OF JOE WALSH

### HEARINGS OFFICE CASE NO. 3140345

### HEARINGS OFFICER: Mr. Gregory J. Frank

**FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

**Background:**

Walsh received a written letter of exclusion (the "Walsh Exclusion"), on September 17, 2014, excluding him from the City of Portland Council Chambers for a period of 30 days. For reasons set forth in the Order, an evidentiary hearing was not held until November 3, 2014 ("11/3 Hearing"). Prior to the 11/3 Hearing the City filed a Motion (Exhibit 32) which included a request that the Hearings Officer dismiss the case as being moot. The Hearings Officer provided Walsh and the City Attorney an opportunity to submit written arguments and provide oral arguments at a December 3, 2014 Hearing ("12/3 Hearing"). The Hearings Officer issued an Order (the "Order") on December 8, 2014 dismissing the Walsh Exclusion appeal as being moot.

Subsequent to the issuance of the Order, the City of Portland City Attorney's Office ("City Attorney") submitted information to the Hearings Office alerting the Hearings Officer of the passage of HB 2324 (codified as ORS 14.175). Upon receipt of the communication of the information from the City Attorney, the Hearings Officer sent a letter to Walsh and Assistant Deputy City Attorney Daniel Simon ("Attorney Simon") (Exhibit 36) requesting written arguments/comments related to the applicability of HB 2324 to this case. Walsh and Attorney Simon each provided a written response to the Hearings Officer (Exhibits 34 and 35). The Hearings Officer admitted Exhibit 34 and 35 into the evidentiary record.

Walsh, in Exhibit 34, stated the following:

> "I ask that you recognize that my case is not moot, and reconvene to decide on the outstanding subpoenas, and schedule a hearing on the merits of my appeal of being excluded from attending and monitoring meetings of the city council for a period of thirty days, (30)."

Exhibit 1
Page 8 of 12

CASE NO. 3140345                                                                                           Page 2

**Scope:**

This Supplemental Order re-considers all documents in the file (Exhibits 1 through and including 36) but is focused upon the arguments made by Walsh (Exhibit 34) and Attorney Simon (Exhibit 35), ORS 14.175 and relevant case law.

**Legal Analysis:**

The Hearings Officer interprets Exhibit 34 as a request for reconsideration/rehearing as allowed under Portland City Code ("PCC") 22.03.115.

HB 2324 passed the Oregon legislature and was signed in to law in 2007. HB 2324 was codified as ORS 14.175. The 74th Oregon Legislative Assembly – 2007 Regular Session issued a "Staff Measure Summary for House Bill 2324 B" which stated the following:

> "HB 2324 B concerns the power of a court to hear lawsuits that
> challenge an act, policy or practice of a public body or public
> official, but have become 'moot' because of an intervening event
> that occurred after the lawsuit began. Generally, courts only
> hear cases that are 'justiciable.' This means a plaintiff must
> have 'standing' to bring the action – i.e., the plaintiff must
> have suffered an injury from the challenged action or must
> otherwise be qualified to seek judicial review of particular
> conduct – and the lawsuit must present a controversy that is
> 'ripe' and not 'moot.' 'Ripeness' and 'mootness' refer to the
> timing of a lawsuit. A lawsuit is not 'ripe' if it is brought to
> soon and is 'moot' if it brought too late. For example, if a
> plaintiff seeks to challenge an agency's failure to issue a
> permit, the action might not be ripe if the party files the
> action before the agency has issued a final decision on the
> matter. If a plaintiff challenges a governmental act precluding
> him and her from participating in a political event, the action
> would be moot if the event took place before the court decided
> the controversy.
>
> The federal courts, as well as every state in the union,
> recognize an exception to the mootness doctrine for controversies
> that come up repeatedly, but cannot be reviewed by appellate
> courts if a strict mootness standard were to apply. Courts call
> this the 'capable of repetition but evading review' doctrine. In
> *Yancy v. Shatzer*, 337 Or 345 (2004), however, the Oregon Supreme
> Court ruled that the judicial power granted by Article VII, sec.
> 1 of the Oregon Constitution does not include the power to hear
> cases that are capable of repetition but might evade review. Two
> years later, the Court decided *Kellas v. Department of
> Corrections*, 341 Or 471 (2006), in which it ruled that the
> legislature has the power to grant standing to a party to
> initiate litigation even if that person might not have a personal
> interest in the litigation. HB 2324 B is a response to the *Yancy*
> and *Kellas* opinions. It would provide that, if a party already
> had standing to initiate a lawsuit, and the action became moot

Exhibit 1
Page 9 of 12

CASE NO. 3140345
Page 3

> while the lawsuit was pending, the party still has an interest in the litigation and the court can issue a judgment if the controversy is capable of repetition but might evade judicial review."

Walsh argued, in Exhibit 34, that ORS 14.175 should be applied to the "mootness" analysis of this case. Walsh argued that this case is one "capable of repetition but evading review" and as such the Hearings Officer's Order should be reversed and the Walsh Exclusion hearing process should proceed to a final decision on the merits.

Attorney Simon argued, in Exhibit 35, that the Hearings Officer should continue to apply the *Yancy* decision to this case and find the case is "moot." In the alternative, Attorney Simon argued that the underlying facts of the Walsh Exclusion appeal do not satisfy the requirements of ORS 14.175.

The Hearings Officer, in the Order, found that Walsh was orally excluded from the City of Portland Council Chambers ("Council Chambers") on September 10, 2014 and subsequently, on or about September 17, 2014, received the written Walsh Exclusion. On or about October 31, 2014, the City submitted a motion to dismiss the Walsh Exclusion appeal case because the case became moot on October 17, 2014. The Hearings Officer, in the Order, dismissed the Walsh Exclusion appeal case based upon his understanding of the relevant dates associated with the Walsh Exclusion and the *Yancy* decision. The Hearings Officer was not apprised of HB 2324 (ORS 14.175) during final written or oral arguments by Walsh or Attorney Simon.

The question before the Hearings Officer, at first blush, appears to be rather straightforward: Should the Hearings Officer apply the three prong test set forth in ORS 14.175 to this case? The Hearings Officer's initial reaction was that the legislature passed HB 2324 (ORS 14.175) and the Hearings Officer is obligated to follow that law. However, in reviewing cases decided by Oregon Courts following the passage of ORS 14.175, the Hearings Officer is less comfortable with his initial reaction.

The Oregon Supreme Court, in *Yancy*, engaged in an extensive historical review of Article VII of the Oregon Constitution and concluded that "the judicial power under the Oregon Constitution does not extend to moot cases that are 'capable of repetition, yet evading review.'" *Yancy v. Shatzer* @ 363  In 2008, after the passage of ORS 14.175, the Oregon Court of Appeals stated that *Yancy* remains good law, and mootness remains an aspect of justiciability. *Pendleton School Dist. V. State of Oregon*, 220 Or App 56, 65 (2008)

In 2013, the Oregon Court of Appeals addressed the "capable of repetition, yet likely to evade judicial review" concept. *Couey v. Brown*, 257 Or App 434, 443-444 (2012). The Court of Appeals stated, in a footnote, the following:

> "We are also reluctant to conclude that this challenge, in the absence of a request for expedited review under ORS 14.175, qualifies for review because we prefer to avoid constitutional questions when possible. If we were to hold that a particular case qualifies for review under ORS 14.175, we would have to confront the obvious question of whether that statute violates the Oregon Constitution under *Yancy*, 337 Or. At 363, 97 P.3d 1161, where the Supreme Court held in no uncertain terms, 'The judicial power under the Oregon Constitution does not extend to

Exhibit 1
Page 10 of 12

> moot cases that are 'capable of repetition, yet evading review.'"
> *Couey v. Brown*, @ 444

In 2014, the Oregon Court of Appeals once again addressed the "capable of repetition, yet likely to evade judicial review" concept. *Krisor v. Henry*, 256 Or App 56 (2013). The Court of Appeals included another footnote which stated the following:

> "In *Yancy v. Shatzer*, 37 Or. 345, 363, 97 P.3d 1161 (2004), the Supreme Court held that the judicial power under the Oregon Constitution does not encompass adjudicating cases that are moot but 'capable of repetition yet evading review.' The legislative assembly enacted ORS 14.175 apparently in response to *Yancy*. Or. Laws 2007, ch. 770, Section 1. This case does not require us to decide whether ORS 14.175, by purporting to create a justiciable controversy where the Supreme Court has held that no such controversy exists, is constitutional." *Krisor v. Henry*, @ 60

It is clear to the Hearings Officer that in the absence of the Oregon Supreme Court decision in *Yancy*, the Hearings Officer would be obligated to apply the three prong test set forth in ORS 14.175 to the facts in this case. However, the Oregon Supreme Court reaffirmed *Yancy* by stating that "When a court is asked to decide 'a matter that no longer is a controversy between the parties[,] Article VII (Amended) section 1, of the Oregon Constitution constrains us from doing so." *State v. Hemenway*, 353 Or 498, 500 (2013) See also *Homestyle Direct v. Dep't of Human Services*, 354 Or 253, 260 (2013)

The Hearings Officer finds the *Yancy* decision, as it respects the concept of "capable of repetition, yet evading review," is based upon Article VII (Amended) section 1 of the Oregon Constitution. The Hearings Officer also finds the "Oregon Constitution does not extend to moot cases that are 'capable of repetition, yet evading review.'" *Yancy v. Shatzer*, @363 The Hearings Officer finds the *Yancy* decision remains the controlling law in Oregon when determining if a case is moot.

The Hearings Officer finds no good and sufficient reason has been raised by Walsh to grant his request for reconsideration/rehearing. The Hearings Officer finds that the Walsh motion to reopen this case for hearing (Exhibit 34) should be denied.

The Hearings Officer, based upon the findings above, shall not address the ORS 14.174 three prong test referenced by Walsh (Exhibit 34) and Attorney Simon (Exhibit 35).

ORDER AND DETERMINATION:

1. Walsh's request for reconsideration/rehearing (Exhibit 34) is denied.

2. This Supplemental Order has been mailed to the parties on January 6, 2015.

3. This Supplemental Order is subject to the right to filing a Writ of Review as set forth in ORS 34.010 et. seq.

Dated: January 6, 2015

Gregory J. Frank, Hearings Officer

Exhibit 1
Page 11 of 12

**5.** Matters not appearing on the Agenda may be considered by the Council under suspension of rules at any session.

**6.** The Auditor shall prepare a supplementary Agenda which shall be designated and known as the Four Fifths Agenda, which shall contain a summary of matters filed in his or her office not later than 5:00 p.m. on the preceding Tuesday for consideration at either the following Wednesday or Thursday session. All documents filed with the Auditor intended for the Four Fifths Agenda shall be initialed by four members of the Council or their representatives, as designated in Subsection 3.02.040 D.2.

**7.** Matters ordered by the Council to be considered at a special time other than the listed sessions shall be considered at the special time as directed by the Council. Council members may direct that special items be listed for meetings other than those specified above.

### 3.02.035 Ordinance Wording.
**A.** Ordinance exhibits.

    **1.** If the directive portion of an ordinance refers to an exhibit, unless the ordinance directs otherwise, the following language is understood to follow; to wit "said exhibit is by this reference incorporated as if set out verbatim."

    **2.** Unless the ordinance directs otherwise, the Auditor shall determine when a copy of an exhibit is to be provided with a copy of the ordinance.

**B.** Appropriation designation. The budget ordinance makes the annual appropriation and defines the level of accounting control. When the directive section of an ordinance includes a reference to an appropriation, the ordinance shall control the appropriation at the same accounting level in the original budget ordinances. These appropriations are subject to the limitations on specific appropriations or types of expenditure stated in the budget ordinance. The designation of an appropriation in an ordinance by subaccount below the level of control may be adjusted administratively without an amending ordinance provided there is no change in the appropriation at the level of control, unless the ordinance directs otherwise.

### 3.02.036 Consent Agenda.
(Amended by Ordinance Nos. 166314 and 17787, effective August 13, 2003.)

**A.** Those who file documents for inclusion on the Council Agenda shall clearly designate such items as "Consent" or "Regular" Agenda. The Council Agenda shall clearly distinguish Consent from Regular Agenda items. The Auditor shall make an appropriate designation if none is assigned.

**B.** The Consent Agenda may include any matter for Council consideration except:

    **1.** Appeals of land use decisions or other land use matters requiring a hearing under City Charter or State law;

    **2.** Any matter which will increase an appropriation unit's budget; or

    **3.** Any matter requested to be placed on the regular agenda at the time of filing with the Auditor.

**C.** The Consent Agenda shall be positioned in the Council Agenda in accordance with Section 3.02.030.

**D.** An item designated for the Consent Agenda may be removed from the Consent Agenda by a Council member or any individual prior to Council vote on the Consent Agenda. The request may be in either written or verbal form. When removed, items shall be considered individually at the end of the Consent Agenda at the same Council meeting. A request to pull an item from Consent shall be made to the City Auditor prior to the beginning of the Council meeting, or presented verbally at the Council meeting.

**E.** At any meeting at which there is a Consent Agenda, the ayes and nays shall be taken upon the passage of all items on the Consent Agenda by a single Council vote. It shall not be necessary that there be a reading of the titles or the effect of the items on a Consent Agenda. Items on a Consent Agenda shall not be subject to amendment or debate. Consideration of the Consent Agenda requires at least four Council members to be present and voting. Action on the Consent Agenda shall require a unanimous vote of all Council members present.

### 3.02.037 Time Certain Agenda.
(Amended by Ordinance Nos. 177787 and 184046, effective September 10, 2010.)

**A.** Any Council member, the City Auditor, City Attorney, City Purchasing Agent, Hearings Officer, City Planning and Sustainability Commission, and any other City appointed board or commission filing an item with the City Auditor for City Council consideration may designate the item as "time certain."

**B.** A request for time certain designation shall be made in writing to the City Auditor at least 4 days prior to the filing deadline for the regular Council agenda items; or by verbal request by the City Council or member thereof at any time prior to City Council action on a particular item. The request shall include an estimate of time to be devoted to the particular item.

**C.** The City Auditor shall schedule the item for hearing before the City Council and inform the office requesting the time certain designation.

**D.** The Council Agenda shall clearly distinguish time certain items from all other items.

### 3.02.040 Rules of the Council.
(Amended by Ordinance Nos. 162784, 165402, 166075, 166314, 170834, 177787, 178617, 180371 and 182515, effective February 4, 2009.)

**A.** Suspension and Repeal of Rules - Robert's Rules of Order.

*Margin notes:* Chapter 3.130 Administrative Appeals; Att H 3



Query   Reports   Utilities   Logout

**3:15-cv-01666-SI** Walsh v. Enge et al
Michael H. Simon, presiding
Date filed: 09/03/2015
Date of last filing: 11/20/2015

# History

| Doc. No. | Dates | Description |
|---|---|---|
| 1 | Filed & Entered: 09/03/2015<br>Terminated: 09/08/2015 | Application for leave to proceed ifp |
| 2 | Filed & Entered: 09/03/2015 | Complaint |
| 3 | Filed & Entered: 09/03/2015 | Case Assignment Notice |
| 4 | Filed & Entered: 09/03/2015 | Clerks Notice of Mailing |
| 5 | Filed & Entered: 09/03/2015 | Case Reassignment Notice |
| 6 | Filed & Entered: 09/08/2015 | Order on motion/application for leave to proceed ifp |
| 7 | Filed & Entered: 09/08/2015 | Clerks Notice of Mailing |
| 10 | Filed: 09/08/2015<br>Entered: 09/10/2015 | Discovery order |
| 8 | Filed & Entered: 09/10/2015 | Scheduling |
| 9 | Filed & Entered: 09/10/2015 | Clerks Notice of Mailing |
| 11 | Filed & Entered: 09/10/2015 | Clerks Notice of Mailing |
| 12 | Filed & Entered: 09/10/2015 | Rule 16 Conference |
| 13 | Filed & Entered: 09/10/2015 | Clerks Notice of Mailing |
| 14 | Filed & Entered: 10/06/2015 | Scheduling |
| 15 | Filed & Entered: 10/06/2015 | Clerks Notice of Mailing |
| 16 | Filed & Entered: 10/16/2015 | Answer to Complaint |
| 17 | Filed & Entered: 10/30/2015 | Motion for Summary Judgment |
| 18 | Filed & Entered: 10/30/2015 | Declaration |
| 19 | Filed & Entered: 10/30/2015 | Declaration |
| 20 | Filed & Entered: 10/30/2015 | Declaration |
| 21 | Filed & Entered: 10/30/2015 | Declaration |
| 22 | Filed & Entered: 10/30/2015 | Declaration |
| 23 | Filed: 11/02/2015<br>Entered: 11/03/2015 | Response to Motion |
| 24 | Filed: 11/02/2015<br>Entered: 11/03/2015 | Exhibits |
| 25 | Filed & Entered: 11/20/2015 | Response to Motion |