# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JOSEPH WALSH**, | Case No. 3:15-cv-01666-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **BRYANT ENGE**, **CHARLIE HALES**, and **CITY OF PORTLAND**, | |
| Defendants. | |

Joseph Walsh, 7348 SE Division St., Portland, OR 97206, *pro se*.

David A. Landrum, Senior Deputy City Attorney, and Daniel A. Simon, Assistant Deputy City Attorney, City of Portland, Oregon, City Attorney's Office, 1221 SW Fourth Avenue, Room 430, Portland, OR 97204. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

This case requires the Court to decide whether the First Amendment allows a Mayor or his or her designee, acting pursuant to a city ordinance, to exclude a person, potentially indefinitely, from attending future City Council meetings to which the public is otherwise invited to attend and present their opinions simply because the person has been disruptive at previous meetings. The First Amendment protects, among other things, "freedom of speech" and "petitioning for a governmental redress of grievances." U.S. Const. amend. I. The First Amendment is incorporated into the Fourteenth Amendment and thus applies to the states and

PAGE 1 – OPINION AND ORDER

local governmental bodies. *Gitlow v. New York*, 268 U.S. 652, 666 (1925). No appellate opinion of which this Court is aware has ever held that the First Amendment permits prospective exclusion orders from otherwise public city council meetings. A presiding officer may remove a disruptive individual from any particular meeting, and a sufficiently disruptive person may even be prosecuted for such conduct if public law permits. But no matter how many meetings of a city council a person disrupts, he or she does not forfeit or lose the future ability to exercise constitutional rights and may not be prospectively barred from attending future meetings. Our democratic republic is not so fragile, and our First Amendment is not so weak.

On July 8, 2015, Joseph Walsh ("Walsh" or "Plaintiff") attended a Portland City Council meeting at City Hall. After Walsh raised his voice and interrupted proceedings, Defendant Mayor Charlie Hales ("Mayor Hales") asked Walsh to leave the City Council meeting and told Walsh that he would be excluded from future City Council meetings for 60 days. This was not the first time that Walsh had been disruptive at a City Council meeting, and it was not the first time that he had been ejected from a meeting that he had disrupted. In fact, Walsh had twice previously been given 30-day exclusion orders from City Council meetings based on his disruptive conduct. He did not, however, challenge those two earlier orders in court.

On July 15, 2015, Defendant Bryant Enge ("Enge") issued Walsh a Notice of Exclusion from City Property (the "Notice"). The Notice informed Walsh that Defendant City of Portland (the "City") was excluding him from City Hall for a period of 60 days, from July 15, 2015, to September 15, 2015. Walsh, representing himself, filed this lawsuit against Defendants on September 3, 2015, under federal civil rights laws, specifically 42 U.S.C. § 1983. He seeks a permanent injunction against enforcement of Portland City Code ("PCC") § 3.15.020B.5.b, which authorizes up to an indefinite exclusion from City Hall and City Council Chambers of

persons who disrupt a City Council meeting. Walsh also seeks a declaratory judgment that the exclusion ordinance violates the First Amendment. Walsh challenges the exclusion ordinance both facially and as applied to him. In lieu of proceeding on Walsh's motion for a temporary restraining order, Defendants and Walsh agreed that they would file cross-motions for summary judgment. For the reasons that follow, Defendants' motion is denied and Walsh's motion is granted.[1]

The First Amendment reflects our democratic republic's commitment to the principle that "debate on public issues should be uninhibited, robust, and wide-open." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). The First Amendment's guarantees do not, however, require the government freely to grant access to all who wish to exercise their right to free speech on every type of government property, at any time, without regard to the disruption caused by the speaker's activities. *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 799-800 (1985). Even in a democracy, the government need not tolerate actual disruptions of government business. Undisputedly, a presiding officer may remove from an official public meeting anyone who engages in actual disruption, provided that the officer is acting in a manner that is neutral with regard to the viewpoint being expressed by the disruptive speaker.

What the government may not do is prospectively exclude individuals from future public meetings merely because they have been disruptive in the past. A contrary holding might lead to officials shutting the government's doors to those whose viewpoints the government finds annoying, distasteful, or unpopular. Permanent or even lengthy exclusions for past disruptive conduct could become a convenient guise for censoring criticisms directed toward the powerful.

---

[1] In his complaint and motion for summary judgment, Walsh also stated that he sought any monetary compensation that the Court deemed appropriate. The Court held oral argument on December 21, 2015, during which Walsh stated that he was abandoning his claim for money damages. The Court thus does not consider any claim for money damages.

The First Amendment's guarantees, although not absolute, are not so flimsy. The Court holds that PCC § 3.15.020B.5.b violates the First Amendment because the ordinance allows for the prospective exclusion of an individual from future City Council meetings based solely on a finding that the excluded person has been disruptive in the past.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

Where parties file cross-motions for summary judgment, the court "evaluate[s] each motion separately, giving the non-moving party in each instance the benefit of all reasonable inferences." *A.C.L.U. of Nev. v. City of Las Vegas*, 466 F.3d 784, 790-91 (9th Cir. 2006) (quotation marks and citation omitted); *see also Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 674 (9th Cir. 2010) ("Cross-motions for summary judgment are evaluated separately under [the] same standard."). In evaluating the motions, "the court must consider each party's evidence,

regardless under which motion the evidence is offered." *Las Vegas Sands, LLC v. Nehme*, 632

F.3d 526, 532 (9th Cir. 2011). "Where the non-moving party bears the burden of proof at trial,

the moving party need only prove that there is an absence of evidence to support the non-moving

party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). Thereafter, the

non-moving party bears the burden of designating "specific facts demonstrating the existence of

genuine issues for trial." *Id.* "This burden is not a light one." *Id.* The Supreme Court has directed

that in such a situation, the non-moving party must do more than raise a "metaphysical doubt" as

to the material facts at issue. *Matsushita*, 475 U.S. at 586.

In addition, a court must liberally construe the filings of a *pro se* plaintiff and afford the

plaintiff the benefit of any reasonable doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

"A pro se litigant must be given leave to amend his or her complaint unless it is 'absolutely clear

that the deficiencies of the complaint could not be cured by amendment.'" *Karim-Panahi v. Los

Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988) (quoting *Noll v. Carlson*, 809 F.2d

1446, 1448 (9th Cir. 1987), *superseded on other grounds by statute as stated in Lopez v. Smith*,

203 F.3d 1122 (9th Cir. 2000)).

## BACKGROUND[2]

### A.  The Portland City Code and Rules of Conduct

The City of Portland's Office of Management and Finance ("OMF"), through the OMF

Bureau of Internal Business Services, manages city-owned property assigned to OMF under PCC

---

[2] The Court notes Defendants' objections to statements that Walsh included in his factual description of the July 8, 2015 events. The Court has reviewed the factual description in Walsh's response to Defendants' motion. The Court also has reviewed Defendants' evidence, including videos of several meetings of the Portland City Council during which Walsh has been actually disruptive. Walsh raises no objections to Defendants' evidence. The Court overrules all objections as duplicative of the summary judgment standard and considers only admissible evidence in deciding the parties' cross-motions for summary judgment.

§ 3.15.020. PCC § 3.15.020B.5 gives OMF the authority to "[d]evelop and enforce Rules of

Conduct for City Buildings, and require all persons to obey the Rules of Conduct. . . . Any

person who fails to comply with the Rules of Conduct for City Buildings, or the reasonable

direction of the Person-in-Charge, may be excluded as provided in this Section." According to

PCC § 3.15.020B.5.b:

> Any Person-in-Charge may exclude any person who violates any
> Rule of Conduct while in or upon any City building or property,
> from a specific City building or property or from all City buildings
> and properties, for a period of 24 hours.  The Mayor, and
> specifically identified designees of the Mayor, may issue an
> exclusion for any period of time up to and including permanent
> exclusion from City buildings.

Mayor Hales has designated Enge as the "Person-in-Charge" under the authority of PCC

§ 5.36.115, which allows the Mayor to designate a "Person-in-Charge" for purposes of excluding

people from city buildings managed by OMF, including City Hall. Enge has served in this role

since January 3, 2013. The memorandum designating Enge as the Person-in-Charge also allows

him to determine what period of exclusion a person's conduct warrants.

The "Rules of Conduct for City of Portland Properties," effective August 12, 2013, are

posted in the windows next to the public entrance to City Hall. Rule Five of the Rules of

Conduct states: "No person shall engage in conduct that disrupts or interferes with the normal

operation or administration of City business, its tenants, employees, visitors or customers, or any

City permitted activity."  Rule Six of these Rules of Conduct states: "No personal shall disobey

the reasonable direction of a City employee, law enforcement, person in charge or security

officer . . . . A direction is reasonable if it . . . is reasonably necessary to preserve the peace or

prevent the disruption of any activity . . . at City Properties." If a person violates the Rules of

Conduct, he or she "may be immediately excluded from City properties as ordered by the 'person

in charge' pursuant to City of Portland Ordinance No. 161538 (Portland City Code Section

PAGE 6 – OPINION AND ORDER

5.36.115). Immediate Exclusion shall be for a minimum of 24 hours." An abbreviated list of the Rules of Conduct is posted inside the public entrance to City Hall.

**B.  Walsh's Exclusion from City Hall**

The Portland City Council conducts its meetings at City Hall, which the City Council opens to the public. In 2014, Mayor Hales began giving a brief statement at the beginning of City Council meetings, reminding those in attendance to remain courteous and respectful and to refrain from interrupting others. Mayor Hales made this statement at the beginning of the meeting on July 8, 2015.

Walsh describes himself as an activist and representative of a group he calls "Individuals for Justice." He frequently attends City Council meetings to observe and provide public testimony. Walsh attended the meeting on July 8, 2015, with the intention of making comments on Agenda Item Number 743, a proposed appropriation of funds from the Oregon Department of Transportation to the Portland Police Bureau. Walsh requested that the Council remove this item from the Council's "Consent Agenda." The Consent Agenda expedites votes on certain matters without amendment or debate, but members of the public may "pull" an item from the Consent Agenda to provide comments. *See* PCC § 3.02.036. At the request of Walsh, the Council removed Agenda Item 743 from the Consent Agenda, but when the matter came up for debate later in the hearing, Walsh was not present because he had briefly stepped out of the Council Chambers. The Council then voted on this agenda item and proceeded to discuss other matters.

When Walsh returned to the meeting and learned that he had missed his opportunity for public comment on the proposed appropriation, he began shouting. Among other things, Walsh stated: "I have to leave from time to time, you know—I stand here outside, I pulled that item . . . ." He then told Mayor Hales "to explain ADA" to everyone (referring to the Americans with Disabilities Act). Mayor Hales responded that Walsh would be excluded from this meeting

and from future meetings for 60 days if he continued to interrupt the proceeding. Walsh continued shouting, slammed his hand on a conference table, and accused Mayor Hales of being "cheap." A security officer requested that Walsh leave the City Council Chambers. Walsh then engaged in a loud confrontation with a City Hall staff person in the building atrium, but ultimately left City Hall voluntarily.

One week later, on July 15, 2015, Walsh returned to City Hall. When Walsh entered the building, John Chandler, project manager for security services at City Hall, personally served Walsh with the Notice. The Notice informed Walsh that he could not enter City Hall or the loggias, ramps, or driveways leading to the City Hall, including past the decorative fence surrounding the building. The Notice stated that the exclusion was for 60 days because Walsh had violated the Rules of Conduct for City of Portland Properties and that his "behavior created an unsafe and hostile environment for City employees and visitors conducting City business." The Notice also informed Walsh of the process for appealing the exclusion to the Code Hearings Office.[3] Additionally, the Notice described alternative ways that Walsh could participate in City Council proceedings during the period of exclusion: he could view City Council meetings live online, submit written comments on the posted agenda to the Council Clerk before meetings, and schedule appointments with other City offices, which the offices might request take place at locations other than City Hall. Enge had signed the Notice. After being handed the Notice, Walsh left the building.

---

[3] An excluded individual may appeal a formal exclusion from City Hall by filing a written request for an appeal with the City Code Hearings Office within five calendar days of the date of the exclusion notice. The written request must specify the basis for the appeal. The individual seeking to appeal must serve a copy of the request for appeal to the Director of Internal Business Services. The request for appeal does not stay the effectiveness of the exclusion. PCC § 3.15.020B.5.b(2), Dkt. 19-1 at 22. Walsh did not appeal the exclusion notice dated July 15, 2015, to the City Code Hearings Office.

Later that day, on July 15, 2015, Walsh attempted to enter City Hall through the main entrance. A Mayor's Security Detail Sergeant, James Wood, informed Walsh that he was trespassing. Walsh entered City Hall despite the warning and went to use the men's restroom on the first floor of the building. Sergeant Wood called Mr. Chandler, who then called the police. Mr. Chandler and Portland Police Officer Mike Bledsoe entered the restroom and informed Walsh that he would be arrested for trespassing if he did not leave.

The period of exclusion from City Hall of July 15 to September 15, 2015, was not Walsh's first exclusion from City Hall. On September 17, 2014, Enge issued Walsh a 30-day exclusion notice based on Walsh's interruptions of City Council meetings on March 12, May 7, and September 10, 2014. An incident report indicated that one of the interruptions put another attendee of the meeting "in fear for her personal safety." The exclusion prohibited Walsh from entering the City Council Chambers on the second floor and the third floor mezzanine of City Hall for 30 days.

On May 20, 2015, Enge issued Walsh another 30-day exclusion notice based on his interruption of a City Council meeting on May 13, 2015. This exclusion again prohibited Walsh from entering City Council Chambers on the second floor and the third floor mezzanine of City Hall for 30 days. Walsh estimates that he has been excluded from City Hall for a total of 120 days and has missed approximately 17 meetings of the City Council.

## DISCUSSION

Defendants argue that the Court should grant their summary judgment motion for three independent reasons: (1) Walsh lacks standing; (2) the doctrine of mootness bars his claims; and (3) the City's prospective exclusion of Walsh from City Council meetings constitutes a reasonable restriction of speech in a limited public forum. Walsh argues that the Court should grant his motion for summary judgment because PCC § 3.15.020B.5.b unreasonably authorizes

PAGE 9 – OPINION AND ORDER

the prospective exclusion of persons from City Council meetings in violation of the First

Amendment.[4]

## A.  Standing

To have standing, a plaintiff must have a "personal interest . . . at the commencement of

the litigation." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 170

(2000) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 6, n.22 (1997)). The

personal interest must satisfy three elements: (1) an injury in fact, *i.e.*, an invasion of a legally

protected interest that is concrete and particularized, as well as actual or imminent; (2) a causal

connection between the injury-in-fact and the defendant's challenged behavior; and

(3) likelihood that the injury-in-fact will be redressed by a favorable ruling. *Id.* at 180-81;

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Declaratory and injunctive relief also

require "a 'substantial controversy . . . of sufficient immediacy and reality to warrant the

issuance of a declaratory judgment.'" *Culinary Workers Union, Local 226 v. Del Papa*, 200 F.3d

614, 617 (9th Cir. 1999) (quoting *Ross v. Alaska*, 189 F.3d 1107, 1114 (9th Cir. 1999))

(alteration in original).

When a plaintiff challenges the constitutionality of a statute or ordinance, "especially in

the context of First Amendment cases," courts do not require "that the plaintiff risk prosecution

by failing to comply with state law" in order to have standing to challenge the statute. *Id.* at 618-

19. A plaintiff must still "demonstrate a realistic danger of sustaining a direct injury as a result of

the statute's operation or enforcement." *Babbitt v. United Farm Workers Nat. Union*, 442 U.S.

---

[4] In his response to Defendants' motion, Walsh also references "due process." Walsh, however, did not allege in his complaint a violation of his due process rights.

Because the Court finds that PCC § 3.15.020B.5.b violates the First Amendment on its face, the Court does not reach Walsh's as-applied claim.

289, 298 (1979). A plaintiff, however, "does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough." *Id.* (quoting *Pennsylvania v. West Virginia*, 262 U.S. 553, 593 (1923)) "[A] credible threat of prosecution" under the challenged statute serves to show impending injury. *Id.* The bar for such a showing is low; the Supreme Court has found a credible threat of prosecution even when the government has never enforced the statute but "has not disavowed any intention of invoking" the statute's penalties. *Id.* at 302.

Courts asses standing based on the facts of the case as they existed at the time the action commenced. *See Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989) ("The existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed."); *Mollan v. Torrance*, 22 U.S. 537, 539 (1824) ("It is quite clear, that the jurisdiction of the Court depends upon the state of things at the time of the action brought, and that after vesting, it cannot be ousted by subsequent events."); *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1171 (9th Cir. 2002) ("Standing is determined as of the commencement of litigation.") (citing *White v. Lee*, 227 F.3d 1214, 1243 (9th Cir. 2000)).

Here, Walsh challenges the constitutionality of a municipal code authorizing Defendants to exclude individuals from City Hall for any period of time, including 60 days. At the time Walsh filed suit, Defendants were enforcing the exclusion policy against him, and Walsh sought a temporary restraining order within the 60-day period of the exclusion. The parties then agreed that they would instead address Walsh's claims by proceeding with cross-motions for summary judgment.

At the commencement of litigation, Walsh was suffering an injury caused by Defendants' actions. Walsh's past exclusions from City Council meetings also demonstrate Defendants'

willingness to exclude people from City Hall and the City Council Chambers for increasingly longer periods of time. Thus, there exists a credible threat of future exclusions under PCC § 3.15.020B.5.b. An order from the Court finding that PCC § 3.15.020B.5.b violates the First Amendment would prevent future extended exclusions. Accordingly, Walsh had standing at the time he filed his complaint,[5] and he has standing now to seek injunctive and declaratory relief against the exclusion ordinance.[6]

## B.  Mootness

Although the Court considers standing to determine whether it exists at the commencement of litigation, the Court considers whether a "case or controversy" continues to exist throughout the litigation under a mootness analysis. *See Arizonans*, 520 U.S. at 67 ("To qualify as a case fit for federal-court adjudication, 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)). According to the Supreme Court, "Standing doctrine functions to ensure,

---

[5] Because Walsh had standing at the time he filed his complaint, his case is distinguishable from *Bricker v. Tri-Met*, 2013 WL 2037123 (D. Or. Feb. 28, 2013). There, a Tri-Met patron filed suit after the expiration of an exclusion order. Additionally, the *Bricker* court found the likelihood of the plaintiff again engaging in conduct that warranted an exclusion order to be too speculative to give rise to standing. The court, however, stated: "The situation might be different if the facts indicated, for example, that [the plaintiff] regularly made 'soapbox speeches' on TriMet platforms. She then might be able to show a legitimate concern regarding future enforcement of the regulation against her." *Id.* at *10. Unlike in *Bricker*, the facts here show that Walsh engages in the kind of speech-making that could very well result in the continued enforcement of the exclusion policy against him in the future.

[6] To the extent that the Court could construe Walsh's complaint as an assertion of claims on behalf of a class, the Court agrees with Defendants that an individual appearing *pro se* may not represent other individuals in federal court. *Johns v. Cnty. of San Diego*, 114 F.3d 874, 876 (9th Cir. 1997) ("While a non-attorney may appear pro se on his own behalf, '[h]e has no authority to appear as an attorney for others than himself.'") (quoting *C.E. Pope Equity Trust v. United States*, 818 F.2d 696, 697 (9th Cir. 1987)) (alteration in original). The Court does not, however, construe Walsh's complaint as an attempt to represent a class. His reference to other activists merely attempts to invoke the overbreadth doctrine as an alternate basis for standing.

among other things, that the scarce resources of the federal courts are devoted to those disputes in which the parties have a concrete stake. In contrast, by the time mootness is an issue, the case has been brought and litigated . . . ." *Friends of the Earth*, 528 U.S. at 191.

Mootness "focuses upon whether [a court] can still grant relief between the parties." *In re Pattullo*, 271 F.3d 898, 901 (9th Cir. 2001). A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (quoting *Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). An exception to mootness exists, however, "for acts that are 'capable of repetition, yet evading review.'" *Friends of the Earth*, 528 U.S. at 190. For example, if a mentally-disabled patient is institutionalized and files a lawsuit challenging the conditions of her confinement, "her postcomplaint transfer to a community-based program will not moot the action, despite the fact that she would have lacked initial standing had she filed the complaint after the transfer." *Id.* at 190-91 (citing *Olmstead v. L.C.*, 527 U.S. 581, 594, n.6 (1999)).

When an act is capable of repetition yet evading review, "the fact that the court cannot give [a plaintiff] the full relief he sought will not render the case moot." *Schaefer v. Townsend*, 215 F.3d 1031, 1033 (9th Cir. 2000). For a controversy to fall within the capable-of-repetition-yet-evading-review branch of the mootness doctrine, two elements must be present: "(1) the duration of the challenged action is too short to be litigated prior to cessation, and (2) there is a 'reasonable expectation' that the same parties will be subjected to the same offending conduct." *Demery v. Arpaio*, 378 F.3d 1020, 1026-27 (9th Cir. 2004) (quoting *Spencer v. Kemna*, 523 U.S. 1, 17-18 (1998)).

The burden of establishing mootness rests on the party raising the issue, and "[t]he burden is a heavy one." *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953). It must be

"absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203, (1968); *see Demery*, 378 F.3d at 1025. The party seeking to invoke mootness must also show that "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation" of the plaintiff's rights. *Davis*, 440 U.S. at 631.

PCC § 3.15.020B.5.b gives Mayor Hales and Enge authority to "issue an exclusion for any period of time up to and including permanent exclusion from City buildings." Walsh asserts that he has been an activist for decades and continues to represent Individuals for Justice. He asserts his intention to continue attending and commenting on agenda items in City Council meetings, and Defendants have excluded Walsh on several previous occasions. By their nature, 60-day exclusion orders are short-lived and will likely expire before the conclusion of any litigation. Although Walsh is no longer currently subject to a formal exclusion order from City Hall, his case is capable of repetition yet evading review. Walsh's challenge to his exclusion, therefore, is not moot.[7]

## C.  First Amendment

The First Amendment protects an individual's right "to speak freely, to advocate ideas, to associate with others, and to petition his government for redress of grievances." *Smith v. Ark. State Highway Emp., Local 1315*, 441 U.S. 463, 464 (1979). The Constitution's "prohibition on encroachment of First Amendment protections is not an absolute. Restraints are permitted for

---

[7] The Court finds Defendants' citation to *Bricker v. Tri-Met*, 2013 WL 2037123, unpersuasive. There, the court found that one of the plaintiff's claims was moot based on her failure to follow Oregon state procedures not relevant in this case. The plaintiff had failed to obtain a proper stay of an exclusion order before petitioning for a writ of review of a hearing officer's decision. *Id.* at *4-7. The court also based some of its mootness analysis on doctrines more applicable to standing. *See Friends of the Earth*, 528 U.S. at 190 ("There are circumstances in which the prospect that a defendant will engage in (or resume) harmful conduct may be too speculative to support standing, but not too speculative to overcome mootness.").

appropriate reasons." *Elrod v. Burns*, 427 U.S. 347, 360 (1976); *see Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 49 (1961) (rejecting "the view that freedom of speech and association . . . as protected by the First and Fourteenth Amendments, are 'absolutes'"). For example, "[n]othing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities." *Cornelius*, 473 at 799-800 (1985). Yet, despite the restraints imposed in appropriate contexts, the First Amendment "reflects a 'profound national commitment' to the principle that 'debate on public issues should be uninhibited, robust, and wide-open.'" *Boos v. Barry*, 485 U.S. 312, 318 (1988) (quoting *Sullivan*, 376 U.S. at 270.

The Supreme Court has identified a three-pronged test for beginning the evaluation of a claim of unconstitutional restriction on speech: (1) whether the First Amendment protects the plaintiff's speech; (2) the nature of the forum; and (3) whether the justifications offered for limiting or excluding speech from the forum satisfy the requisite standards. *Cornelius*, 473 U.S. at 797.

Under the first prong, Defendants argue that Walsh's speech at City Council meetings is not protected, but Defendants do not dispute that Walsh voiced concerns—albeit loudly and vigorously—about the order of the meeting and his inability to comment on the item he "pulled" from the Consent Agenda. As a critique of the City Council's behavior, Walsh's speech, his actual and primary message, was not mere "amplification." *Cf. Bush v. City of San Diego*, 2010 WL 2465034, at *1-2 (S.D. Cal. June 11, 2010) (stating that nudity is not protected expressive conduct because it only amplifies the plaintiff's primary message). The Ninth Circuit has emphasized, "Citizens have an enormous first amendment interest in directing speech about

public issues to those who govern their city." *White v. City of Norwalk*, 900 F.2d 1421, 1425 (9th Cir. 1990). Walsh's speech is protected under the First Amendment. As the Ninth Circuit has done in similar cases, the Court next turns to the nature of the forum. *See Reza v. Pearce*, 806 F.3d 497 (9th Cir. 2015).

### 1.   The Forum

The extent to which the government may regulate speech depends on the nature of the forum where the speech takes place. *See Seattle Mideast Awareness Campaign v. King Cty.*, 781 F.3d 489, 495-96 (9th Cir. 2015). Federal courts have generally recognized three types of public forums: (1) traditional public forums; (2) designated public forums; and (3) limited public forums. *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44-46 (1983); *Reza*, 806 F.3d at 502. Traditional public forums are places such as streets and parks, "which by long tradition or by government fiat have been devoted to assembly and debate." *Perry*, 460 U.S. at 45. Designated public forums include nontraditional forums that "the state has opened for use by the public . . . for expressive activity." *Id.* Finally, limited public forums are government property "limited to use by certain groups or dedicated solely to the discussion of certain subjects." *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 470 (2009).

City council meetings are limited public forums. *Norse v. City of Santa Cruz*, 629 F.3d 966, 975 (9th Cir. 2010) ("[T]he entire city council meeting held in public is a limited public forum.") (citing *Norwalk*, 900 F.2d at 1425). The nature of the remainder of a city hall building is less clear. The Ninth Circuit has found areas of a city hall to be "designated public forums" when the city has opened the spaces to expressive activity. *Hopper v. City of Pasco*, 241 F.3d 1067, 1078 (9th Cir. 2001) (finding that when the city decided to invite local artists to display their works in the public hallways, the city thereby created a designated public forum in the art gallery). When the government has not expressly opened a public building to expressive speech,

PAGE 16 – OPINION AND ORDER

however, the Ninth Circuit has held that buildings such as a state senate building are limited public forums. *Reza*, 806 F.3d at 503.

There is no evidence in the record that the City has opened the loggia, driveways, and first floor of City Hall to expressive speech. The City's Rules of Conduct and historical reliance on exclusions show a desire to limit public access to the building. Moreover, the City Hall as a whole somewhat resembles a judicial and municipal complex that the Ninth Circuit found to be a nonpublic forum. *Sammartano v. First Judicial Dist. Court, in & for Cty. of Carson City*, 303 F.3d 959, 966 (9th Cir. 2002), *abrogated on other grounds by Winter v. Nat. Res. Def. Council*, 555 U.S. 7 (2008). In *Sammartano*, the Ninth Circuit considered that the complex contained judges' chambers, courtrooms, and agencies; that the building had minimal compatibility with expressive activity; and that the building had a need for security. City Hall also contains various agency offices and has a need for security. Thus, Walsh has not shown that these areas have become designated public forums, and the Court finds that the City Council meetings and the City Hall building are at most limited public forums.[8]

### 2. Legal Standard for Regulating Speech in a Limited Public Forum

In a limited public forum, such as a city council meeting, "[a] council can regulate not only the time, place, and manner of speech in a limited public forum, but also the content of speech—as long as content-based regulations are viewpoint neutral and enforced that way." *Norse*, 629 F.3d at 975; *see also Perry*, 460 U.S. at 61 ("Once the government permits discussion of certain subject matter, it may not impose restrictions that discriminate among viewpoints on those subjects whether a nonpublic forum is involved or not."). In addition, in a limited public forum, the government "may not exclude speech where its distinction is not 'reasonable in light

---

[8] In contrast, the Sixth Circuit has held that the steps of a city hall building are a traditional public forum. *Pouillon v. City of Owosso*, 206 F.3d 711, 717 (6th Cir. 2000).

of the purpose served by the forum.'" *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995) (quoting *Cornelius*, 473 U.S. at 804–806). Thus, the applicable standards for regulating speech in a limited public forum are whether a restriction is viewpoint neutral and reasonable. *Kindt v. Santa Monica Rent Control Bd.*, 67 F.3d 266, 270-71 (9th Cir. 1995) ("[L]imitations on speech at those meetings [city council and city board meetings] must be reasonable and viewpoint neutral, but that is all they need to be.").

### 3.  Whether the Exclusion Ordinance Is Viewpoint Neutral

The Ninth Circuit has upheld ordinances that allow for the immediate exclusion from a city council meeting of any person who makes disruptive remarks or who engages in disruptive conduct. *See Norwalk*, 900 F.2d at 1424. The moderator of such a meeting has "a great deal of discretion" to determine what constitutes a disruption. *Id.* at 1426. Although "abuses can occur, as when a moderator rules speech out of order simply because he disagrees with it, or because it employs words he does not like," the Ninth Circuit allows immediate exclusion policies that do not have such abuses written into them. *Id.*

Here, the City's ordinance has no abuses written into it. Additionally, Mayor Hales only excluded Walsh after Walsh became actually disruptive by yelling and interrupting the meeting. Walsh points to no evidence suggesting that Defendants selectively enforced the exclusion ordinance against Walsh because of his viewpoint and even concedes that Defendants' exclusion ordinance is viewpoint neutral. PCC § 3.15.020B.5.b is a viewpoint-neutral municipal code that Defendants implemented to prevent disruptions of City Council meetings.

### 4.  Whether the Exclusion Ordinance Is Reasonable

Walsh does not argue that his *immediate* exclusion for actually disruptive conduct on July 8, 2015, was unreasonable. Ninth Circuit precedent clearly establishes that it is reasonable for city councils immediately to exclude a disruptive individual from a meeting for the duration

of that meeting. *Norwalk*, 900 F.2d at 1426 ("Speakers are subject to restriction only when their speech 'disrupts, disturbs or otherwise impedes the orderly conduct of the Council meeting.' So limited, we cannot say that the ordinance on its face is substantially and fatally overbroad."); *see also Norse*, 629 F.3d at 976 (describing *Norwalk* as holding that a city's "'Rules of Decorum' are not facially over-broad where they only permit a presiding officer to eject an attendee for *actually* disturbing or impeding a meeting") (emphasis added).

Walsh, however, argues that the 60-day prospective exclusion is unreasonable. Undeniably, Defendants had authority to exclude Walsh on the day of his disruption. But Ninth Circuit precedent makes it a closer call whether Defendants may reasonably exclude Walsh prospectively from future meetings over the next 60 days. *See Reza*, 806 F.3d at 506 ("No cases, in the Ninth Circuit or otherwise, even remotely suggest that *Norse*'s principle can be inverted to indefinitely ban an individual from a government building based on a single disruption of a hearing.").

A restriction on protected speech must be "reasonable in light of the purpose served by the forum." *Id.* at 504 (quoting *DiLoreto v. Downey Unified Sch. Dist. Bd. of Educ.*, 196 F.3d 958, 965 (9th Cir.1999)); *see Healy v. James*, 408 U.S. 169, 180 (1972) ("First Amendment rights must always be applied 'in light of the special characteristics of the . . . environment' in the particular case.") (quoting *Tinker v. Des Moines Indep. Sch. Dist.*, 393 U.S. 503, 506 (1969)). This reasonableness requirement demands "more of a showing than does the traditional rational basis test; i.e., it is not the same as 'establish[ing] that the regulation is rationally related to a legitimate governmental objective, as might be the case for the typical exercise of the government's police power.'" *Tucker v. State of Cal. Dep't of Educ.*, 97 F.3d 1204, 1215 (9th Cir. 1996) (quoting *Multimedia Pub. v. Greenville–Spartanburg Airport Dist.*, 991 F.2d 154, 159

(4th Cir. 1993)). The government's "failure to select . . . simple available alternative[s] suggests" that a restriction is not reasonable. *Id.* at 1216 (quoting *Multimedia Publishing*, 991 F.2d at 161). Here, the simpler available alternative is removal from any meeting that a person actually disrupts.

To show that a restriction is reasonable, the government must offer "evidence that the restriction reasonably fulfills a legitimate need." *Sammartano*, 303 F.3d at 967. Public safety concerns, the avoidance of disruptions, and the existence of alternative communication channels are all relevant to a restriction's reasonableness. *See Swarner v. United States*, 937 F.2d 1478, 1482 (9th Cir. 1991); *Hale v. Dep't of Energy*, 806 F.2d 910, 917 (9th Cir. 1986). Defendants offer all three reasons in support of their contention that the prospective exclusion ordinance is reasonable.[9]

### a.  Public Safety Concerns and the Avoidance of Disruption

In *Reza*, the Ninth Circuit addressed the defendants' argument that safety concerns justified the plaintiff's exclusion from a limited public forum. The court noted that safety concerns regarding future disruptions "must be supported by the record." *Reza*, 806 F.3d at 507. Additionally, any restrictions at issue must "serve the government's public safety interest," although the Ninth Circuit emphasized that this is not "a least restrictive means test." *Id.* Based on the record in *Reza*—which showed one incident of disruption and a generally "tense environment" at the time of the plaintiff's actions—the Ninth Circuit found that the government's safety concerns did not justify a complete ban from the senate building. *Id.*

---

[9] Although reasonableness is often a question for the jury, "reasonableness becomes a question of law appropriate for determination on motion for summary judgment when only one conclusion about the conduct's reasonableness is possible." *W. v. State Farm Fire & Cas. Co.*, 868 F.2d 348, 351 (9th Cir. 1989). Further, the only forms of relief sought by Plaintiff are injunctive and declaratory, which present only questions for the Court.

In other cases, the Ninth Circuit held that in order to justify a ban on speech in a limited or nonpublic forum, the safety concerns must be "real." *Sammartano*, 303 F.3d at 967; *Tucker*, 97 F.3d at 1211. In *Sammartano*, the Ninth Circuit found "no evidence in the record supporting a conclusion that clothing indicating affiliation with biker organizations is particularly likely to be disruptive or intimidating." 303 F.3d at 968. Absent such evidence, the Ninth Circuit found that a ban on clothing with biker symbols was unreasonable even in a nonpublic forum. *Id.* Any conflict that occurred because of a challenge to the regulation could not serve as "evidence of circumstances giving rise to the need for that very regulation." *Id.* The Ninth Circuit further stated:

> We agree with Appellees that the interest in keeping a government building accessible and safe is both legitimate and significant. But absent a showing in the record of actual (or realistic threat of) interference or disruption, the demonstrated hardship imposed upon Appellees by the barring of enforcement of the Rules is minimal. This is especially so given the continuing ability of the individual judges to maintain decorum in their courtrooms or in particular cases, which is not at issue in this case.

*Id.* at 973.

In *Tucker*, the Ninth Circuit emphasized that in asserting that a regulation is reasonable, the government must do more than make "a minimal showing that one individual's speech has disrupted the workplace, or threatens to do so." *Tucker*, 97 F.3d at 1211. Finding that a state employer had not made this showing, the *Tucker* court held that orders banning religious advocacy in the workplace and religious displays outside employees' offices or cubicles violated the First Amendment. *Id.* at 1214, 1217.

The Supreme Court has not required proof of past disturbances for a government entity to justify restrictions of speech on government property. Where a lower court required a showing of "past disturbances" or "evidence that future disturbance would be likely" to justify restricting

access to school mail facilities, the Supreme Court reversed. *Perry*, 460 U.S. at 52 n.12. The

Supreme Court stated: "We have not required that such proof be present to justify the denial of

access to a non-public forum on grounds that the proposed use may disrupt the property's

intended function." *Id.* In another case, the Supreme Court highlighted that "the Government

need not wait until havoc is wreaked to restrict access to a nonpublic forum." *Cornelius*, 473

U.S. at 810.[10]

In the context of a limited public forum, the Ninth Circuit has recognized "that content-

based restrictions may be reasonable 'in order to minimize chances of abuse, the appearance of

favoritism, and the risk of imposing upon a captive audience.'" *DiLoreto*, 196 F.3d at 968

(quoting *Lehman v. City of Shaker Heights*, 418 U.S. 298, 304 (1974)). Still, courts may consider

all the surrounding circumstances in assessing whether a "limitation is consistent with preserving

the property for the purpose to which it is dedicated." *Id.* at 967.

Defendants argue that the prospective exclusion ordinance is necessary in order to protect

public safety and prevent future disruptions. They argue that the policy is particularly necessary

in cases, such as this one, where an individual has a history of disrupting meetings and making

other people in attendance feel unsafe. Defendants have presented some evidence about their

concerns. The evidence includes Walsh banging his hand on a conference table in meetings and

tossing a pocket-sized copy of the Constitution towards Mayor Hales. Additionally, Defendants

---

[10] Defendants cite these Supreme Court cases in support of their contention that they are not required to show that future disruptions will occur in order to justify the prospective exclusion ordinance. These cases, however, relate to nonpublic forums, with different purposes than the limited public forum here, and do not dictate the result in the present case. Yet because restrictions on speech in nonpublic forums must still be "viewpoint neutral" and "reasonable in light of the purpose served by the forum," the Court considers cases relating to nonpublic forums to be instructive. *Sammartano*, 303 F.3d at 966 (quoting *Cornelius*, 473 U.S. at 806).

have produced an incident report showing that someone at a meeting once asked for an escort because she had a verbal confrontation with Walsh and felt fearful.

Defendants cite *Rosebrock v. Beiter* in support of their argument that public safety concerns and the avoidance of disruption justify the ordinance. 788 F. Supp. 2d 1127 (C.D. Cal. 2011), *aff'd sub nom. Rosebrock v. Mathis*, 745 F.3d 963 (9th Cir. 2014). In *Rosebrock*, the court held that a regulation prohibiting displays on the fence of a campus of U.S. Department of Veterans Greater Los Angeles Health Care System ("VAGLA") did not violate the First Amendment because it was a reasonable restriction of speech in a nonpublic forum. The court found that the defendant's proffered rationale for the restriction—threats to the security and wellbeing of VAGLA patients—was "reasonable and legitimate in light of the purpose of the VAGLA Campus." *Id.* at 1138. That purpose was "to provide high quality health care services to eligible veterans." *Id.* The rationale offered for the restriction on speech was specific to a hospital setting. *Rosebrock* is consistent with the Supreme Court's holding in *Cohen v. California* that "an undifferentiated fear or apprehension of disturbance . . . is not enough to overcome the right to freedom of expression." 403 U.S. 15, 23 (1971) (quoting *Tinker*, 393 U.S. at 508) (internal quotation marks omitted).

Here, the purpose of the limited public forum, specifically the City Council meetings, is to allow public discourse on proposed City Council actions. The Ninth Circuit has stressed that "a City Council meeting is still just that, a governmental process with a governmental purpose. The Council has an agenda to be addressed and dealt with." *Norwalk*, 900 F.2d at 1425. Nonetheless, "City Council meetings . . . , where the public is afforded the opportunity to address the Council, are the focus of highly important individual and governmental interests." *Id.* The "very purpose" of a council meeting "is the creation of a forum for public discourse and

decisionmaking." *Id.* at 1425 n.3 (quoting Robert Post, *Between Governance and Management: The History and Theory of the Public Forum*, 34 U.C.L.A. L. Rev. 1713, 1799 (1987)).

Like judges in their courtrooms, Mayor Hales has the continuing ability to maintain decorum in Council meetings by ordering disruptive individual immediately to leave the City Council Chambers. Maintaining decorum does not, however, require prolonged and prospective exclusions from a forum intended for public discourse and debate. The Ninth Circuit has emphasized that in a city council meeting, the council may exclude individuals for actual disruption, but the council may not exclude people for "constructive disruption, technical disruption, virtual disruption, *nunc pro tunc* disruption, or imaginary disruption. The City cannot define disruption so as to include non-disruption . . . ." *Norse*, 629 F.3d at 976. According to the Ninth Circuit, "Actual disruption means actual disruption." *Id.* Defendants have not pointed to any appellate court decision, nor was the Court able to locate any such decision, allowing an incident, or even several incidents, of actual disruption to justify the prospective exclusion of an individual from future public meetings. Defendants have a simple alternative to the prospective exclusion ordinance. They can order any disruptive individual to leave the meeting that he or she is disrupting for the duration of that meeting.

Additionally, nothing in the record shows that Walsh actually threatened anyone with violence, encouraged others to engage in violence, or refused voluntarily to leave a meeting that Mayor Hales ordered him to leave. In this case, mere speculation that some persons may make others feel unsafe or engage in additional disruptions is an insufficient basis upon which to erect a governmental power to bar those who wish to express their views from participating in public

debate. Here, with other alternatives readily available to the City, avoidance of future disruption simply does not justify the prospective exclusion ordinance at issue.[11]

### b. Availability of Alternative Channels of Communication

The reasonableness inquiry for restrictions in limited public forums also takes into account "whether the restrictions imposed leave open alternative channels of communication." *Reza*, 806 F.3d at 504. The Supreme Court has found that no First Amendment violation occurs when the government bars citizens from exchanging views in formal settings when opportunities for informal communication also exist. *Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 n.4 (1984). That other places may be available for speech does not, however, save an unconstitutional restriction. *Schneider v. NJ, Town of Irvington*, 308 U.S. 147, 163 (1939) ("[O]ne is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place."). Other modes of communication do not qualify as alternative channels where those modes are "insufficient, inappropriate and prohibitively expensive." *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 516 (1981) (internal quotation marks omitted).

Defendants argue that the Court should uphold the prospective exclusion ordinance because the PCC § 3.15.020B.5.b leaves open alternative channels of communication. Excluded individuals can (1) watch City Council meetings live online; (2) view the upcoming agenda for Council meetings online and then submit written comments to the Council Clerk before the meetings; and (3) schedule appointments with City offices, although the offices may be able to request that the appointments take place at locations other than City Hall.

---

[11] The Court does not intend this decision to prevent the City from attempting to formulate an ordinance more "tailored to the legitimate concerns" of City Hall. *See Sammartano*, 303 F.3d at 968.

In support of their argument that the availability of alternative channels of communication saves the prospective exclusion ordinance in this case, Defendants cite *Mead v. Gordon*. 583 F. Supp. 2d 1231 (D. Or. 2008). There, a county Jail Division Temporary Division Order directed for a one-year exclusion from a county courthouse. The exclusion at issue in *Mead* still allowed the plaintiff to enter the courthouse with an escort. The plaintiff was thus able to enter the courthouse "approximately once per week during the period of her exclusion." *Id.* at 1240. The court in *Mead* also noted that although "one might question the necessity of a year-long exclusion when [the plaintiff's] actions were not violent," the plaintiff's ability to visit the courthouse with an escort "was a reasonable means to accommodate both parties' [plaintiff's and the government's] interests." *Id.* at 1239-40. In contrast, PCC § 3.15.020B.5.b allows the complete and indefinite ban of an individual from City Hall. Moreover, the purposes of City Hall and City Council meetings, as opposed to a courthouse, affects the analysis in this case.

As discussed above, the purpose of the forum, particularly City Council meetings, is to allow public discourse on proposed City actions. As did the exclusion policy in *Reza*, the City's prospective exclusion ordinance allows for the complete ban of individuals from a government building where legislative actions take place. In *Reza*, the complete exclusion ultimately prevented the plaintiff from meeting with an elected senator at the senate building. According to the Ninth Circuit, "imposing a complete bar on [the plaintiff's] entry into the Building, clearly exceeds the bounds of reasonableness clearly established by *White*, *Kindt*, and *Norse* as a response to a single act of disruption . . . ." *Reza*, 806 F.3d at 505.

That other modes of communication might be available to excluded individuals does not save the ordinance. The prospective exclusion ordinance allows Defendants to prevent individuals from physically using any of the facilities in City Hall, making live comments on any

PAGE 26 – OPINION AND ORDER

City Council business during public meetings, and formally or informally meeting with anyone,
including elected council members, on the premises. Thus, prolonged and prospective exclusions
defeat the very purpose of the forum: to provide the opportunity for discourse on public
matters.[12]

Even drawing all reasonable inferences in Defendants' favor, to prospectively exclude
Walsh, or any other individual, based on a past incident, or even several past incidents, of
disruption is not exclusion from a given meeting for actual disruption: it is an impermissible
prospective exclusion for possible or assumed disruption in the future. None of the justifications
offered by Defendants show that PCC § 3.15.020B.5.b is reasonable in light of the purpose of the
forum. The Court declines Defendants' invitation to be the first federal court in the nation to
uphold such a broad prospective exclusion ordinance. The Court grants the permanent injunctive
and declaratory relief Walsh seeks.[13]

---

[12] Some courts have been more willing to allow prospective restraints on speech in the
context of private speakers threatening to continue to defame other private individuals. *See, e.g.*,
*Hill v. Petrotech Res. Corp.*, 325 S.W.3d 302, 309 (Ky. 2010) (allowing an injunction of
defamatory speech after a trial court's determination that the speech at issue was false); *Balboa
Island Vill. Inn, Inc. v. Lemen*, 40 Cal. 4th 1141, 1155-56, (2007), *as modified* (Apr. 26, 2007)
(holding that the court may issue an injunction prohibiting the defendant from repeating
statements determined to be defamatory). But even in a context more tolerant of restraints on
speech, courts emphasize that silencing future speech is harmful. *See, e.g.*, *McCarthy v. Fuller*,
2015 WL 9245308, at *7 (7th Cir. Dec. 18, 2015) ("An injunction against speech harms not just
the speakers but also the listeners . . . . '[T]he First Amendment goes beyond protection of the
press and the self-expression of individuals to prohibit government from limiting the stock of
information from which members of the public may draw.'") (quoting *First Nat'l Bank of Boston
v. Bellotti*, 435 U.S. 765, 783 (1978)); *Hill*, 325 S.W.3d at 307 ("A rush to enjoin distasteful,
annoying, unpopular, or even damaging speech would often result in the suppression of truthful,
legitimate discourse."); *Balboa*, 40 Cal. 4th at 1159 ("We recognize, of course, that a court must
tread lightly and carefully when issuing an order that prohibits speech.").

[13] When a plaintiff seeks a permanent injunction, he or she must satisfy a four-factor test
before a court may grant such relief. A plaintiff must demonstrate: (1) that he or she has suffered
an irreparable injury; (2) that remedies available at law are inadequate to compensate for that
injury; (3) that the remedy in equity is warranted considering the balance of hardships between
the plaintiff and defendant; and (4) that a permanent injunction would not be contrary to the

**CONCLUSION**

Defendants Bryant Enge, Mayor Charlie Hales, and City of Portland's Motion for

Summary Judgment (Dkt. 17) is DENIED. Plaintiff's Motion for Summary Judgment (Dkt. 23)

is GRANTED. Accordingly, the Court GRANTS Plaintiff's request for injunctive relief and a

declaratory judgment as to the City's prospective exclusion ordinance, Portland City Code

§ 3.15.020B.5.b.

**IT IS SO ORDERED**.

DATED this 31st day of December, 2015.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge

---

public interest. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Walsh has
satisfied this four-factor test. He has suffered the irreparable injury of having his speech in City
Council meetings prospectively suppressed. He does not seek money damages nor would
remedies at law adequately compensate him for violation of his First Amendment rights. *See,
e.g.*, *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1502 (9th Cir. 1996) (finding
that irreparable harm stemming from constitutional violations "cannot be adequately
compensated at law"). The equitable remedy is warranted considering that Defendants may still
maintain decorum in City Council meetings without prospectively excluding individuals by
excluding disruptive individuals from any meetings those individuals actually disrupt. Finally, a
permanent injunction will protect the First Amendment rights of Walsh and other similarly-
situated individuals without unduly burdening Defendants and is therefore not contrary to the
public interest.