1                IN THE UNITED STATES DISTRICT COURT

2                   FOR THE DISTRICT OF OREGON

3
JOSEPH WALSH,                    )   3:15-cv-01666-SI
4                                )
        Plaintiff,               )
5                                )
             vs.                 )   December 21, 2015
6                                )
BRYANT ENGE, et al.,             )
7                                )
        Defendants.              )   Portland, Oregon
8

9

10

11

12

13                     TRANSCRIPT OF PROCEEDINGS

14           BEFORE THE HONORABLE MICHAEL H. SIMON

15              UNITED STATES DISTRICT COURT JUDGE

16

17

18

19

20

21

22

23

24

25

1                           APPEARANCES

2  FOR THE PLAINTIFF:    Joseph Walsh, Pro se
                         7348 SE Division Street
3                        Portland, Oregon  97206

4

5  FOR THE DEFENDANTS:   David Landrum
                         Daniel Simon
6                        1221 SW Fourth Avenue, Suite 430
                         Portland, Oregon  97204
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22  COURT REPORTER:       Dennis W. Apodaca, RDR, RMR, FCRR, CRR
                         United States District Courthouse
23                       1000 SW Third Avenue, Room 301
                         Portland, OR  97204
24                       (503) 326-8182

25

```
 1                    (December 21, 2015)

 2                 P R O C E E D I N G S

 3            (Open court:)

 4            THE CLERK:  Your Honor, this is the time set for

 5   argument in civil case 15-1666-SI, Walsh versus Enge, et al.

 6   For the record, we have Mr. Joseph Walsh appearing, present pro

 7   se.  Counsel for defendant, would you please identify yourself

 8   for the record.

 9            MR. SIMON:  Good morning, Your Honor.  Dan Simon for

10   the City of Portland.

11            MR. LANDRUM:  David Landrum, one of the city

12   attorneys, for the City of Portland also.

13            THE COURT:  All right.  Good morning, everyone.  Good

14   morning, Mr. Walsh.  I think the last time I saw you in this

15   courtroom was the early part of 2014 when you gave testimony in

16   the U.S. versus City of Portland matter; am I correct?

17            MR. WALSH:  Yes, Your Honor.

18            THE COURT:  Welcome back, sir.

19            MR. WALSH:  All right.

20            THE COURT:  If you want, there should be fresh water

21   in the pitchers for both sides and glasses.

22            I have read all of the materials.  We have pending

23   cross-motions for summary motion on Mr. Walsh's complaint.  It

24   doesn't matter to me who begins the oral argument.  It is my

25   intention to give both sides a full and fair opportunity to be
```

1   heard on their arguments.  I do have some questions to either

2   Mr. Simon or Mr. Landrum or Mr. Walsh.  Any preference on who

3   goes first?

4           MR. WALSH:  I have no preference.

5           THE COURT:  Okay.  Mr. Simon, do you?

6           MR. SIMON:  We don't have a preference either,

7   Your Honor.  I am happy to go first.

8           THE COURT:  All right.  It is the defendants' motion

9   for summary judgment.  We have plaintiff's cross-motion, you

10  may proceed.

11          MR. SIMON:  Thank you, Your Honor.  My name is

12  Dan Simon.  Mr. Landrum is here to answer questions.  I will be

13  arguing the motion on its merits today.  The City has moved for

14  summary judgment on multiple grounds.  The first ground is

15  justiciability; the second is that this conduct is not

16  protected by the First Amendment; and third, the City's

17  exclusion process is a permissible exercise of governmental

18  authority under the First Amendment.

19          To start with justiciability, this case arises out of

20  a 60-day exclusion from City Hall that the City issued on

21  July 15, 2015 for Mr. Walsh.  That exclusion expired in

22  September of 2015, and Mr. Walsh is currently able to appear

23  and testify before City Council at City Council meetings

24  without restrictions.

25          Our justiciability argument is that a decision by

1   this Court would not have any effect on Mr. Walsh's current

2   right to appear and testify before the City Council.  I want to

3   emphasize that our justiciability arguments encompasses both

4   mootness and standing.

5          Regarding mootness, we understand that there is an

6   exception that a case is capable of repetition, that it is

7   being reviewed or may receive a decision, but the burden is on

8   Mr. Walsh to show that this case fits into the cases of

9   repetition exception.  For Mr. Walsh to argue that he will be

10   subjected to an exclusion in the future, he must implicitly

11   concede that he will disrupt future City Council meetings.  The

12   fact that his case relies on speculative future events means he

13   hasn't shown a concrete injury based on present facts, which is

14   an essential element of standing.

15          Your Honor, in every incident in the record, which we

16   have provided to you, Mr. Walsh had an opportunity to testify

17   before the Council so long as he stays on message.  At no point

18   was he prevented from speaking to Council at those meetings on

19   the items that he had testified on.  It was only when his

20   communication escalated beyond the subject of his testimony

21   into disruptive behavior that his testimony was then barred.

22   His disruptive behaviors, as we have shown in the record,

23   through the videos and transcripts --

24          THE COURT:  And I have watched the videos.

25          MR. SIMON:  Thank you, Your Honor.  So I won't go

1    into detail about what's on the video since Your Honor has seen

2    the record.

3            These outbursts, Your Honor, are not protected by the

4    First Amendment because they don't carry any standalone

5    message.  The First Amendment protects conduct that is intended

6    to convey a particularized message.  It is the City's position

7    that there is no message in making a scene and causing the City

8    Council meeting to come to a halt.  That is simply an

9    amplification of the message that Mr. Walsh is trying to

10   portray, and that doesn't carry any First Amendment protection.

11           If Your Honor gets past those first two arguments,

12   then we get to --

13           THE COURT:  Let me ask you a question about standing,

14   because you didn't really specifically talk about standing that

15   I heard.  Don't we need to measure standing at the time the

16   complaint was filed, and the time the complaint was filed he

17   had standing to challenge the 60-day order, doesn't he?

18           MR. SIMON:  Your Honor, I will defer to Mr. Landrum

19   on this question.

20           MR. LANDRUM:  Let me see, Your Honor.  The complaint

21   looks like it was filed on September 15th, and we are saying

22   that it was issued on the 17th.  So it expired 60 days later in

23   November, and so I think that's correct.  I think it was in

24   place when he filed his complaint.

25           THE COURT:  I think so too.  I don't think there is

1  any merit to the standing argument.

2          MR. SIMON:  Thank you, Your Honor.

3          THE COURT:  You may proceed.

4          MR. SIMON:  Then talking about the First Amendment

5  argument, the authority for the City's exclusion process is

6  provided by two sections of Portland City Code.  Section 315.20

7  provides that persons in charge may exclude any person who

8  fails to comply with the rules of conduct for city buildings.

9  Section 5.36.115 designates persons in charge of city property

10 within each commissioner's assigned bureaus and departments,

11 and so the two individually named defendants in this case,

12 Mayor Charlie Hales, is commissioner in charge of Office of

13 Management and Finance, which has jurisdiction over City

14 properties, and Mayor Hales has designated Bryant Enge as the

15 person in charge for the purpose of exclusions.

16         The notice for exclusions is provided in the Rules of

17 City Conduct for city properties, which states that a person

18 can be excluded for various periods of time for violating the

19 rules of conduct.

20         THE COURT:  I didn't follow that.  I thought it said

21 that they can be excluded for any period of time up to and

22 including permanent exclusion.  Am I mistaken?

23         MR. SIMON:  That's correct, Your Honor.  I meant

24 various periods of time since that -- we can exclude for a

25 length of time up to a permanent exclusion.

1          THE COURT:  Does the plaintiff have the ability, even

2    though he was only excluded for 60 days, to challenge the

3    provision in the ordinance that would allow the City to

4    challenge on a permanent basis?

5          MR. SIMON:  He does, Your Honor.  He has the

6    opportunity to appeal an exclusion to the City's Code Hearings

7    Office.

8          THE COURT:  No, that's not what I meant.  I

9    apologize.  That's my mistake.

10         Does he have the opportunity to make the argument in

11   this court, in this hearing, on these motions that, even though

12   he was only excluded for 60 days, and that's serious enough,

13   and we will talk about that in a few minutes.  But in theory,

14   the ordinance gives the City the right to exclude someone

15   permanently.  Does he have the ability to challenge that in

16   this proceeding, in this litigation, and if so, how can the

17   City possibly defend its right to give a permanent exclusion?

18         MR. SIMON:  I believe he does have the opportunity to

19   challenge that in this courtroom, Your Honor.

20         THE COURT:  So maybe you will get to it when we get

21   to the reasonableness of the restriction, but I'm looking at a

22   couple of questions.  One is, is a 60-day restriction

23   reasonable?  By the way, I'm going to start out -- I don't

24   think Mr. Walsh disagrees with this, but when it is his turn to

25   speak, he can confirm or deny.  I think he even agrees that if

1    a person is being actually disruptive during a hearing, the

2    presiding officer or someone delegated with authority can

3    remove someone who is actually being disruptive, and that

4    doesn't violate the First Amendment.

5          So the real question here, point one, does the

6    ordinance, as applied here, where there was a restriction that

7    he may not return to a City Council meeting for 60 days, even

8    if he is not going to be disruptive, does that violate the

9    First Amendment?  Relatedly, the second question is, is the

10    ordinance facially invalid because it allows, not only for

11    future exclusions such as here for 60 days, but also in theory

12    up to a permanent exclusion?  Those are some of the things in

13    my mind.  I would be interested in your perspective.

14          MR. SIMON:  Thank you, Your Honor.

15          To address the first question, I will refer to the

16    case of Reza v. Pearce from the Ninth Circuit, which I believe

17    is the most recent comprehensive statement of exclusion laws

18    and exclusion procedures within the Ninth Circuit.

19          THE COURT:  I think you are right.

20          MR. SIMON:  Reza v. Pearce is a case where an

21    individual who is viewing an Arizona State Senate proceeding

22    from an overflow chamber was applauding and booing during the

23    Senate proceeding.  He was identified by Senate staff as an

24    individual that was disrupting the hearing.  That information

25    was then conveyed to the Arizona state senator.  The Arizona

1    state senator then gave the disruptive individual an indefinite

2    exclusion from the Arizona state Senate building.

3         Later the Arizona state Senate proffered rules that

4    suggested that exclusions would be kept to two weeks, but it

5    wasn't clear in Reza v. Pearce whether that applied to the

6    plaintiff in that case.  Reza, in the City's view, represents

7    an extreme example of an exclusion policy at work.  The Ninth

8    Circuit in that case identified a factual question over whether

9    or not the plaintiff had actually disrupted the proceeding.

10        The Government in that case had not shown that there

11   was a legitimate concern that the plaintiff would disrupt

12   future meetings, so the Government can not justify the lengthy

13   exclusion of the plaintiff in that case.

14        THE COURT:  Didn't the Ninth Circuit go even further,

15   in particular, on page 506 on that case, the majority opinion

16   states in the third paragraph under (2), Ninth Circuit law at

17   the time of Senator Pearce's conduct.  In that third paragraph,

18   the Ninth Circuit writes in the final sentence, "No cases in

19   the Ninth Circuit or otherwise even remotely suggest that

20   Norse's principle can be inverted to indefinitely ban an

21   individual from a government building based on a single

22   disruption of a hearing."

23        What do I make of that?

24        MR. SIMON:  Your Honor, I believe that statement

25   addresses a situation such as the Court faced in Reza.

1   However, I do believe also that our situation is

2   distinguishable.

3              THE COURT:  Because there were multiple instances?

4              MR. SIMON:  One, because there were multiple

5   instances; two, because the Mayor who issued these exclusions

6   was a direct witness to all of these instances.  I also want to

7   point to a quote in the dissent of Reza, which is found at page

8   510, which is, "After reviewing our law at the time, the

9   majority concludes that 'no cases in the Ninth Circuit'" --

10             THE COURT:  Slowly.  When you read out loud from

11  text -- we all have this problem -- we tend to read too

12  quickly.  When we have a court reporter, reading too quickly

13  jeopardizes the accuracy of the transcript.  Let me ask you to

14  start that quote again slowly.

15             MR. SIMON:  Thank you, Your Honor.  "After reviewing

16  our law at the time, the majority concludes that no cases, in

17  the Ninth Circuit or otherwise, even remotely suggests that

18  Norse's principle can be inverted to indefinitely ban an

19  individual from a government building based on a single

20  disruption of a hearing.

21             "But this answers the wrong question, and it is

22  ultimately a red herring.  The fact that no cases affirmatively

23  permitted an official to ban an individual from a government

24  building based on a single disruption, the majority's

25  conclusion, is irrelevant for purposes of qualified immunity.

1    Instead, the relevant question is whether any case expressly

2    prohibited an official from banning an individual from a

3    government building for a single disruption.  None of our cases

4    at the time of the hearing in question answer that question."

5            The Ninth Circuit dissent then goes on to discuss the

6    history of the cases, White v. City of Norwalk, Kindt v. Santa

7    Monica Rent Control Board, Norris v. City of Santa Cruz, and

8    ultimately concludes that none of those cases say anything

9    about whether an official can ban an individual from future

10   meetings as a result of an actual disruption.

11           THE COURT:  I have read those cases several times.  I

12   have read that dissent.  As, of course, you know, that is a

13   dissent, and it seems like it may very well be a question of

14   first impression in the Ninth Circuit, and as far as I found,

15   in cases throughout the country.

16           Are there any appellate decisions that you are aware

17   of that -- let's start with that -- that uphold the authority

18   of a governmental official, maybe in the context of a City

19   Council meeting or something, that is appropriately analogous

20   to exclude someone who was shown to be actually disruptive from

21   attending future meetings?

22           We will talk to Mr. Walsh in a few minutes, but I

23   think it is pretty darn clear that if someone is being

24   disruptive in a meeting, actually disruptive in a meeting, they

25   can be removed from that meeting for the duration of that

1    meeting, and that does not violate First Amendment rights.

2            What I'm troubled by is the prospective exclusion

3    order, and I don't see any appellate decisions anywhere that,

4    at least in the context of a limited public forum, such as the

5    City Council meeting, that upholds prospective exclusions.  I

6    say "limited public forums," and I think that distinguishes a

7    Tri-Met-type situation where you are talking more about access

8    to services.  But where you are actually in a limited public

9    forum speaking to a governmental body, are you aware of any

10   appellate case law that would uphold or allow prospective

11   exclusions beyond the date and time of the meeting itself where

12   the person was actually disruptive?

13           MR. SIMON:  Your Honor, we will acknowledge that we

14   do not have a case that says that.

15           THE COURT:  And I'm not aware of it either.  So what

16   I'm hearing the City urging to me is they want me to be the

17   first Court in the country to acknowledge that prospective

18   exclusions do not violate the First Amendment, and they are not

19   citing any precedent that would support that, and that's given

20   me heartburn.  You can try to make me feel more comfortable.

21           Go ahead.

22           MR. SIMON:  Your Honor, I will point to -- it is not

23   an appellate case, but it is a District of Oregon case.  It is

24   the case of Mead v. Gordon.  That's at 583 F.2d 1231.

25           THE COURT:  That's Judge Papak's case involving the

1    disruption at the Washington County Courthouse.  I think that's

2    arguably factually distinguishable.  I will read that several

3    more times.  I think it is a different situation.  If I recall

4    it correctly, the person wasn't even completely excluded from

5    going back to Washington County Court as long as they had

6    someone to accompany them to deal with a threat issue; am I

7    correct?

8         MR. SIMON:  Your Honor, I believe there were some

9    discrete circumstances in which the plaintiff in Mead was

10   allowed to return to the courthouse.  I believe one of those

11   was whether that person was a party to a court proceeding.  I

12   believe that also that person would be allowed to travel in the

13   courthouse so long as they had a security escort.

14        THE COURT:  Right.  That's what I'm thinking of too.

15   It sounds like an interesting sort of ad hoc solution to that

16   problem.  As far as I know, that case did not go up on

17   appellate review.

18        MR. SIMON:  That's correct.

19        THE COURT:  Obviously, No. 1, it is not binding on

20   me.  No. 2, I will take a look at it for whatever persuasive

21   value that it may have.  But you didn't cite any appellate

22   cases that support the proposition that a prospective exclusion

23   of a limited public forum is admissible.  I'm familiar with

24   that case, among others.  I will re-read that one too.

25        MR. SIMON:  Your Honor, another case that I will cite

1   to you, which was affirmed by the Ninth Circuit, is the case of

2   Rosebrock v. Beiter, 788 F.Supp. 2d 1127, which is affirmed at

3   745 F.3d 963, and that is citing Supreme Court --

4          THE COURT:  Let me hear those cites again.  788 --

5          MR. SIMON:  788 F.Supp.2d 1127.

6          THE COURT:  It was affirmed at what cite?

7          MR. SIMON:  745 F.3d 963.

8          THE COURT:  That's Ninth Circuit you say?

9          MR. SIMON:  Correct.

10         THE COURT:  I'm not familiar with that case.  Tell me

11  about it.

12         MR. SIMON:  That case is citing a Supreme Court case

13  of Cornelius v. NAACP Legal Defense and Educational Fund.

14         THE COURT:  That case, I know.

15         MR. SIMON:  In that case, the District Court opinion

16  at 1139, that cited Cornelius.  It said, "The Supreme Court has

17  held that the mere possibility of disruptions and controversies

18  is sufficient justification to deny access to a nonpublic

19  forum."

20         THE COURT:  I'll take a closer look at that.

21         MR. SIMON:  That's Rosebrock.

22         THE COURT:  I'll take a closer look at that.  I'm not

23  familiar with that.

24         MR. SIMON:  It is cited in our motion for summary

25  judgment at page 22.

1          THE COURT:  I did read a lot of the cases.  I must

2   have missed that one.

3          MR. SIMON:  I also want to point to a Supreme Court

4   case.  The case is -- pardon me, Your Honor.

5          THE COURT:  In Rosebrock, can you tell me what the

6   holding was?  The language there, was that dicta?  If you don't

7   know, that's all right.  I will go back and read it.

8          MR. SIMON:  Yes, Your Honor.  I will refer to page 22

9   of our motion for summary judgment for the discussion there.

10         THE COURT:  One moment.  Let me take a look at it.

11         I don't quite see the answer to my question on page

12  22.  I will take a look later.

13         MR. SIMON:  About halfway down, I do want to point to

14  the citation of Perry Education Association v. Perry Local

15  Educators' Association.  The quote there, "There is no showing

16  in the record of past disturbances or having a future

17  disturbance would be likely.  We have not required such proof

18  be present to justify the denial of access to a nonpublic forum

19  on the grounds that the proposed use may disrupt the property's

20  intended function."

21         THE COURT:  We are dealing with a limited public

22  forum.

23         MR. SIMON:  Yes, Your Honor.

24         The other case that I want to point to from the

25  Supreme Court is Minnesota State Board for Community

1   Colleges v. Knight.  At page 283 and 284 of that case, it

2   states, "The Constitution does not grant to members of the

3   public generally a right to be heard by a public body making

4   decisions of policy."

5           So the First Amendment does not confer any

6   affirmative right for Mr. Walsh to testify on items before the

7   City Council in person at the precise moment that those items

8   are being heard.

9           There are alternative methods for communication

10  prescribed in the City's exclusions.  Mr. Walsh still had the

11  opportunity to view testimony of City Council meetings on line.

12  He may submit testimony in writing in advance of a City Council

13  hearing, and he also may schedule business with city personnel

14  at alternative locations.

15          THE COURT:  Counsel, so let me ask you, the exclusion

16  order here, was that to punish him for being disruptive at the

17  prior hearings?

18          MR. SIMON:  No, Your Honor.

19          THE COURT:  Then what was the purpose of the 60-day

20  exclusion?

21          MR. SIMON:  The purpose was to preserve the order and

22  decorum of City Hall and the safety of its attendees.

23          THE COURT:  So why isn't the decorum and safety

24  preserved by excluding him when he was disruptive?

25          MR. SIMON:  Because, Your Honor, of the history of

1    disruption and the increased possibility for future disruption.

2    We're facing a situation where the plaintiff can enter a

3    City Council meeting, disrupt the City Council meeting, cause

4    the City Council meeting to grind to a halt while he is

5    removed, and then come back to another City Council meeting and

6    then simply repeat the same process.

7              THE COURT:  I'm not following this, because you

8    didn't exclude him permanently, as the ordinance seems to

9    permit.  You excluded him for 60 days.  So on day 61 he could

10   come back and do exactly what you don't want him to do.  So

11   what's the real purpose of the 60-day exclusion?

12             MR. LANDRUM:  If I may, Your Honor.

13             THE COURT:  You may.

14             MR. LANDRUM:  The purpose is not to punish Mr. Walsh

15   by inflicting some kind of difficult burden on him, but there

16   is an element to this that suggests to Mr. Walsh perhaps you

17   ought to let other people take their turn in addressing the

18   Council.  Then you can take your turn in addressing the

19   Council.  And then the Council may take its turn in addressing

20   the people who are present in a way that lets us get out of

21   Council meetings before late, after dark.

22             THE COURT:  I don't disagree with that one bit.

23   That's why when anyone has been shown to be actually

24   disruptive, they can and probably, in my opinion -- I probably

25   shouldn't say this, but I am going to -- they should be removed

1    if they are actually disruptive.

2           Now, what seems to me, though, by then entering the

3    prospective order saying you can't come back for 60 days is to

4    say, "And if you are going to be disruptive, there is going to

5    be some penalty attached.  There is going to be some

6    punishment.  You're going to lose your ability to speak to us

7    even without being disruptive for 60 days," maybe even with the

8    implied threat that if you come back, and you're disruptive on

9    day 61, maybe it will be 90 days.  Do it again, it might be 120

10   days.

11          So there seems this concept that you are going to

12   lose some of your rights.  You are going to lose some of your

13   privileges because of the way you have previously behaved in

14   order to try to deter future offenses.  Now, I don't know

15   whether that is or isn't offensive to the First Amendment.  I'm

16   still struggling with that.  But I'm trying to find out what

17   the purpose of the 60-day exclusion order is.  That's the only

18   thing I could come up with.

19          MR. LANDRUM:  Well, before I turn it back over to

20   Mr. Simon, because I told him I would.

21          THE COURT:  You can tag team all you want.

22          MR. LANDRUM:  Two things:  First thing, it is

23   inherent in the nature of the rule that, depending on the

24   conduct displayed by the person present at the City Council

25   meeting, some escalating response can be had, depending on what

1    you are doing and how often you do it.

2            But it is just inherent with the rule that, while

3    you're gone, we are going to try to get in some City Council

4    meetings that go along the agenda, and we don't have to stop to

5    run anybody out of the chamber because they are putting a brake

6    on the meeting.  Then once we have done that and 60 days has

7    come up, "Welcome back, Mr. Walsh," and we will try it again.

8    I think it is both inherent in this language in the rule.  It

9    is also inherent in the authority of the governing city body to

10   carry out its business.

11           THE COURT:  Now, I take it that it is the City's

12   position obviously that a 60-day exclusion is not an

13   unreasonable restriction.  We know that in a limited public

14   forum -- and that's what we're dealing with here -- in a

15   limited public forum, the restrictions have to be both

16   reasonable and viewpoint neutral.  Nobody is arguing that it is

17   not viewpoint neutral.  I think it is viewpoint neutral.

18           So the question is, is the 60-day exclusion

19   reasonable?  Obviously I think by the City's position here,

20   they have to be taking the position that 60 days is reasonable,

21   right?

22           MR. LANDRUM:  Yes, that's correct.

23           THE COURT:  Would 90 days be reasonable under these

24   circumstances?

25           MR. LANDRUM:  Maybe not, but we haven't gotten there

1    yet with Mr. Walsh.  We weren't ready for 90 days yet this

2    time; this was his third one.

3              THE COURT:  I have to figure out -- and I don't think

4    you disagree with this -- whether 60 days is reasonable.  If

5    you tell me that 90 days might not be reasonable, now I need to

6    figure out, okay, why might 90 days not be reasonable, but 60

7    days is?

8              I'll start out by granting you, if we're in the

9    middle of a City Hall meeting, and Mr. Walsh or anyone else is

10   actually disruptive, there's every right under the

11   First Amendment to remove them for the duration of that

12   meeting.  There's no doubt about it in my mind, and there is

13   plenty of Ninth Circuit precedent to that effect.

14             So we know that removing someone for the duration of

15   the meeting is not unreasonable.  You tell me that removing

16   them for 90 days, even with a pattern of several prior

17   incidents, might not be reasonable.  You say that 60 days is.

18   I'm trying to figure out, why is 60 days reasonable?  Why not

19   30?

20             MR. LANDRUM:  Because -- I'm sorry.

21             THE COURT:  Go ahead.

22             MR. LANDRUM:  Because we already tried 30 with him,

23   and that didn't work.

24             THE COURT:  Your position is, if you remove him from

25   one meeting, that should be sufficient.  If he continues or

1   someone continues to be actually disruptive, you can try to

2   increase it a little bit more.  If that solves the problem,

3   good.  But if they continue to be actually disruptive, then you

4   can ratchet up the length of the exclusion.  Maybe if 60 didn't

5   work, next time you exclude him for 90.  If that didn't work,

6   maybe you exclude him for 180, and then eventually exclude

7   somebody maybe permanently.  Is that the City's theory here on

8   how to evaluate reasonableness under the First Amendment?

9            MR. LANDRUM:  I would offer two things about that,

10  Your Honor.  First of all, because it is similar to the

11  Washington County Circuit Court in Mead -- they were

12  escalating.  It is a reasonable, rational ad hoc response to an

13  actual problem, so in that way, yes.

14           THE COURT:  Although Mead is not precedent here.

15           MR. LANDRUM:  I understand that Mead is not

16  precedent.

17           THE COURT:  I am trying to deal with what the legal

18  criteria are and the fact that another trial court in Mead

19  approved something that never went up on appeal.

20           MR. LANDRUM:  I'm not trying to argue that Mead is

21  some kind of authoritative review, but I'm trying to echo

22  something that you said to us a few minutes ago, which was that

23  was an ad hoc approach to an immediate, practical problem.

24           THE COURT:  By the way, don't misunderstand me.  That

25  was also not a statement by me that Mead was correct under the

1    First Amendment.

2           MR. LANDRUM:  I understand that also, Your Honor.

3    I'm saying that's what makes the approach by the City, because

4    this is an actual practical problem.  The bus needs to get

5    there by 6:30, and it can't get there because someone is

6    standing in front of it.  The only people that get to deal with

7    that and make the bus get there as close to 6:30 as they can

8    are the five people sitting at the desk in the City Council

9    chambers, and they are trying to do that working with what they

10   have.  No. 1, it is just simply a practical response to

11   practical problems.

12          THE COURT:  That's what I don't understand, and here

13   is why.  Although I don't have any in this hearing, but I will

14   have it in other hearings.  We will have courtroom security

15   officers here, U.S. Marshals here, if there are any problems.

16   If you have a Council security officer there, and the very

17   first time that anybody is actually disruptive, especially if

18   it is Mr. Walsh with a history, you say, "I am sorry,

19   Mr. Walsh.  You have been disruptive in this hearing.

20   Security, remove him."  Then you go on and continue running

21   your bus.  Why isn't that a solution that solves the problem

22   that you have identified without doing undue offense to the

23   First Amendment?

24          MR. LANDRUM:  Two problems:  One, the security in the

25   City Hall, they are not part of the Police Bureau.  They are

1    contracted security services.  They don't have any more

2    authority than I do to put their hands on Mr. Walsh and make

3    him leave the City Council chambers.  If he doesn't want to,

4    then we have got to bring in a police officer and go down the

5    trespass road.  And that happens.  That just adds to the time

6    that the City Council and everybody there is sitting around and

7    tapping their feet while Mr. Walsh holds it hostage.

8            So the description of the idea -- one time

9    Judge Baker, when I was in her courtroom, turned to the clerk

10   and said, "Call the guard," and the clerk barely reached for

11   the phone, and the guard came through the backdoor of the

12   courtroom and things settled down.  City Council chambers don't

13   quite work that way, but almost.

14           Now, another thing I was going to offer about this is

15   the varying length of time for the exclusion and whether the

16   City is going to make an exclusion for one meeting or 30 days

17   or 60 days or permanent is also in the response to what the

18   actual disruptive conduct is.  Now, without naming names and

19   going into detail, we recently had an event that involved

20   somebody putting hands on somebody else.  Well, that's it.  We

21   can't really --

22           THE COURT:  I agree.  So why don't we just call the

23   police, call the DA, and have that person prosecuted for

24   battery?

25           MR. LANDRUM:  In that instance we did.  The point I'm

1    trying to make is, that's not the problem that we had with

2    Mr. Walsh, and so we don't want to go to that option right away

3    because it doesn't merit that option right away.  It merits a

4    different option.

5            THE COURT:  I understand the problem.  I'm just not

6    so sure that the First Amendment gives that kind of leeway and

7    that kind of discretion under these circumstances.  I am

8    concerned that there is no appellate precedent that says it

9    does.

10           MR. LANDRUM:  Unless you have another question, I'm

11   going to turn it back over to Mr. Simon.

12           THE COURT:  Very good.

13           Mr. Walsh, let me give Mr. Simon a few more minutes,

14   and then I'll turn to you.

15           Mr. Simon, concluding remarks, and I will let you

16   rebut after Mr. Walsh.

17           MR. SIMON:  Thank you, Your Honor.

18           I believe Mr. Landrum has now addressed many of

19   Your Honor's questions.  I will add that if this Court were to

20   completely invalidate the City's exclusion policy from a facial

21   standpoint, the City would be in the difficult in regards to

22   its ability to conduct business sufficiently and safely.

23           If there is a means for the City to be able to

24   restrict access to individuals with known histories of

25   disruptive behavior, that leaves to the aforementioned

1    situation where a person can simply -- if they are intent on

2    disrupting City Council -- can simply return nonstop and repeat

3    this process ad nauseam.

4         The City would also have no means restricting the

5    access to individuals who are physically disruptive as well as

6    verbally, as in the situation that Mr. Landrum described.  An

7    individual who has been physically aggressive towards city

8    personnel or other citizens at that meeting, they would be

9    allowed entry into the City Council chamber, and they would be

10   allowed to be in close proximity to their previous targets of

11   their physical aggression.  In both situations, the right of

12   both the City Council to conduct its business sufficiently and

13   the rights of others to appear and testify before the City

14   Council are affected.

15        We believe that the exclusion policy is a

16   content-neutral means of maintaining the government's ability

17   to conduct that safe and efficient business.

18        THE COURT:  I agree.  I think it is content-neutral.

19        MR. SIMON:  We, in the record, have shown you that

20   this is a unique situation where the plaintiff has a documented

21   and undisputed history of disrupting City Council meetings and

22   then refusing to alter his disruptive behavior despite any

23   actions taken against him to minimize or remove that conduct.

24   So the City asks that you grant its motion for summary judgment

25   and deny plaintiff's cross-motion.

1              THE COURT:  Thank you very much, Mr. Simon.

2              Mr. Walsh.  You may either stand or remain seated,

3    whatever is more comfortable for you, sir.

4              MR. WALSH:  I will start from the sitting position.

5    I have to apologize for my voice.  I have been on oxygen now

6    for eight years, and I take a lot of medications.  Apparently

7    it is affecting my voice box, but you can understand me.  It is

8    a little bit difficult for me to get some of the words out.

9    Sometimes my presentation will go from whisper to yelling.  I

10   get into a lot of trouble over that, because people do not

11   understand it.  However, I would ask just some patience.

12             THE COURT:  I will.  I will give you a

13   recommendation, but also ask for a favor.  If you have a

14   choice, I would prefer a whisper to yelling.

15             MR. WALSH:  I will try to do that.

16             We agree with the Court that we are not arguing that

17   if my behavior in the City Council meetings is inappropriate in

18   the eyes of the presiding official, that he or she has the

19   option to remove me.  They've removed me three times.  I have

20   never been arrested on all three occasions.  So, therefore, it

21   is at least implied that I have cooperated on some level.  They

22   ordered me out, and I left -- sometimes with resistance,

23   sometimes mouthy, buy I did leave.  They never called the

24   police.  I was never arrested.  I was escorted out by the

25   security people, and some of the security people weren't very

1    friendly with me.

2           Now, the City has spent a lot of time, about

3    70 percent of their brief, telling you how bad I am.   I

4    represent individuals for justice that represents a group of

5    people that monitor, among other things, City Hall.

6           I have attended through three mayors -- Mayor Potter,

7    Mayor Sam Adams, and Mayor Hales -- I calculate that I have

8    attended about 400 City Council meetings.   They, the City,

9    report to you three instances.   I think if my math is right,

10   and I was never great at math, that's 1 percent.

11          How can any reasonable person say that I've attended

12   400 meetings, three of them that I was a little bit obnoxious,

13   and I was taken out and blocked from that meeting that day as

14   punishment, and then on top of that was issued an exclusion, an

15   exclusion based on a code of conduct that was written by a city

16   employee that has 19 items on it, and if you turn the wrong

17   way, they can nail you.   It is so encumbering, so general, that

18   the First Amendment is turned on its head.

19          It is a semi-private or public forum.   That was new

20   to me.   I thought it was public.

21          THE COURT:   The technical term, it is called a

22   "limited public forum."

23          MR. WALSH:   Limited public forum.   That was new to

24   me.   I did not know that.

25          However, during the time of public testimony, I

think -- my opinion -- it becomes a public forum.  I may be
wrong on that.  However, that's the attitude that I went in.  I
was entitled to my three minutes.  In the last incident of the
60 days -- and that's what we are really appealing on this.

THE COURT:  The removal from the consent agenda.
Then you stepped out to address some medical issues, and they
had already moved past you.

MR. WALSH:  But they were aware of the medical
issues.  My oxygen was still there, so they knew.  They did not
want to talk about this item.  This item was $100,000 being
moved from Transportation to Police Overtime.  They did not
want to do it.  Is it too loud?

THE COURT:  Yes.

MR. WALSH:  They did not want to talk about that.

Now, all I did was yell from the audience to the
Mayor, "What happened to the agenda item?"  And they said, "You
weren't here.  We voted on it.  It is gone.  It is finished.
You cannot talk about it."

I was the one who called it.  I have a right to talk
about that.  They held it up for two hours.  If you look on the
charter, the charter says that a consent to agenda items are
No. 3 on the agenda.  It is about a half hour into the meeting.

It also says that if somebody pulls an agenda item,
it must be considered right after the vote of the others, which
means about maybe another ten minutes.

1          What Charlie Hales does, he moved it all the way in

2     the back under regular base, and that means that you have to

3     wait two to three hours to talk three minutes about something

4     you object to.  What happens?  People leave.  They don't have

5     the three hours.  Unfortunately for Charlie Hales, I'm retired,

6     so I can stay.  Again, they tell you how bad I am, and I'm not

7     that bad.  I have holes in my tongue from biting it at some of

8     these meetings.

9          The reason that I got so upset on that one, it was

10    playing what they did.  It was so playing, because there were

11    no apology.  "Gee, Mr. Walsh, I didn't know you were here.  I'm

12    sorry."  They said, "No, you were out of the room; too bad."

13          THE COURT:  Mr. Walsh, let me ask a procedural

14    question --

15          MR. WALSH:  Let me just finish this.

16          THE COURT:  Okay.

17          MR. WALSH:  There is a man sitting here today,

18    Mr. Davis.  Mr. Davis has been permanently barred from

19    City Hall, and his crime was videotaping an arrest taking place

20    at City Hall.  That was his crime.  They told him to leave.  He

21    said, "No, I have a right to videotape and record this."  They

22    said, "No, you don't; arrest him."  They arrested him, and now

23    he is permanently barred.

24          These guys are going after activists, Your Honor.  We

25    have four activists now that are either excluded or barred.

1    And if you try to do the appeal, they will claim mootness,

2    because you cannot get the appeal on a 10-day or a 15-day, and

3    so they will run the clock out.  Then they claim mootness.  So

4    it is a trap door.

5              THE COURT:  By the way, it is easier to claim

6    mootness in a state court in Oregon because of the Oregon state

7    law procedures.  In federal court, as Mr. Simon described, we

8    do have the doctrine of capable of repetition yet evading

9    review.  So federal lawsuits are more difficult to become moot.

10   Unfortunately, or fortunately -- I'm not going to comment on

11   state law -- but under state law, under the Oregon Supreme

12   Court rulings, it is easier for a dispute to become moot.

13             MR. WALSH:  We just had a decision in our state

14   Supreme Court that brings it in line with the federal courts.

15   We were the last state to do it.  There were 49 other states

16   that already did it, but we just did it about four months ago.

17   That's the e-mail that you got from the Auditor's Office,

18   because I asked for a clarification on that, because the

19   Auditor's Office runs the Hearing Office.  My question to the

20   auditor was, if the Supreme Court now, in Oregon, is saying

21   that you cannot claim mootness anymore, you have to comply with

22   the federal, what does that mean?  And she came back and she

23   says it's dead.

24             THE COURT:  All right.  I will say I have not been

25   staying on top of that issue in state court.

1          Let me ask you a procedural question.

2          MR. WALSH:  All right.

3          THE COURT:  I really have not yet made up my mind

4   what I'm going to do about this case.  You have heard some of

5   my concerns.  But let me ask you, in your complaint, and I

6   appreciate the fact that you are representing yourself, you

7   don't have a lawyer, so it is a little bit unclear to me.  I'm

8   not being critical of you, but I want to see if I can clarify

9   something.

10         If I were to agree with your First Amendment

11  challenge to the ordinance here that excluded you for 60 days,

12  No. 1, I would make a declaration to that effect.  No. 2, I

13  might very well enter what's called a permanent injunction

14  enjoining the enforcement of the ordinance as it is presently

15  written.  But it is also possible, and I don't know if this is

16  what you want, I don't know whether this would be a waste of

17  time for you or anybody else, it is also possible that if I

18  were to agree with your First Amendment analysis, that you

19  would have a right to a jury trial on whether or not you are

20  entitled to any money damages for a violation of your

21  constitutional rights.

22         If you ask for a jury trial, and you have a right to

23  a jury trial, a jury would decide whether or not you have any

24  right to money damages.  But it is unclear to me whether that

25  is also part of what you are requesting in your complaint.  Can

1    you clarify for me now, please, whether or not you are simply

2    requesting a declaration from this Court and a permanent

3    injunction against the City from this Court against the

4    ordinance, as currently drafted or as applied to you in this

5    case, or if you're also asking for a jury trial on money

6    damages.  Can you clarify that for me?

7            MR. WALSH:  I think so.  I have no interest in money

8    at all.  I have interest.  I think that one man -- the Mayor --

9    should not have the power to decide whether he is going to

10   exclude me from City Council for 30, 60, or 90 days, or

11   permanently.  It's up to him; it's totally subjective.  They

12   base it -- they run it through the City Attorney to make it at

13   least somewhat legal.

14           But here is the question that we asked in our brief:

15   Does the Mayor have that kind of power?  And if he does, what's

16   the restrictions on him?

17           THE COURT:  Right.

18           MR. WALSH:  To answer you are question, no, I'm not

19   interested in money.  I'm not interested in taking this to

20   trial.  I am interested in you saying to me, "Mr. Walsh, the

21   Mayor had that power; too bad."

22           THE COURT:  Yes.

23           MR. WALSH:  Or, "No, he doesn't."

24           THE COURT:  It is a very important question that you

25   raise.  I'm not going to give the answer now orally from the

1    bench.  I want to study these issues a bit more thoroughly.  I
2    am going to write a written opinion about it.  You will get one
3    in the mail.  They will get a copy of the opinion as well.
4    Whoever doesn't like what I say has the right to appeal to the
5    Ninth Circuit.
6          I want to study these issues a little bit more.  I am
7    going to give in a few moments, when you are done, I am going
8    to give Mr. Simon a final rebuttal.  Then I am going to take
9    this matter under advisement and issue a written opinion
10   probably within 30 days, give or take.
11         Anything further, Mr. Walsh?
12         MR. WALSH:  Thank you for your patience.  The reason
13   that I didn't submit another brief at the end is I thought it
14   would be repetitious.
15         THE COURT:  And I appreciate that.  Thank you.
16         Mr. Simon, final words in rebuttal, and then I'll
17   take it under advisement.
18         MR. SIMON:  Thank you, Your Honor.  I want to remind
19   the Court that there is no due process claim at issue.
20         THE COURT:  I understand.  Plaintiff is alleging
21   First Amendment free speech.
22         MR. SIMON:  I also want to clarify a point Mr. Walsh
23   made about another who was excluded.
24         THE COURT:  You don't need to.  I think that I really
25   understand the context.  The only claim before the Court is

1    Mr. Walsh's claim and only based upon the 60-day order.  In

2    fact, the prior instances with Mr. Walsh, that may be

3    background that led up to you.  But the issue before the Court

4    is whether or not the City, under the ordinance, had the

5    authority to issue a 60-day exclusion to Mr. Walsh under these

6    circumstances.

7              MR. SIMON:  Thank you, Your Honor.

8              THE COURT:  I will make my opinion limited to that

9    question.

10             MR. SIMON:  Thank you, Your Honor.

11             THE COURT:  Thank you all very much.  I appreciate

12   the written briefing.  I appreciate the oral argument.  I will

13   take it under advisement.  I will do my best to release the

14   written opinion within about 30 days.

15             Thank you.

16             (End of proceedings.)

17

18

19

20

21

22

23

24

25

--oOo--

        I certify, by signing below, that the foregoing is a
correct transcript of the record of proceedings in the
above-entitled cause.  A transcript without an original
signature, conformed signature, or digitally signed signature
is not certified.

/s/ Dennis W. Apodaca                    January 11, 2016
DENNIS W. APODACA, RDR, RMR, FCRR, CRR              DATE
Official Court Reporter