# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JOSEPH WALSH**, <br><br> Plaintiff, <br><br> v. <br><br> **BRYANT ENGE**, *et al.*, <br><br> Defendants. | Case No. 3:15-cv-1666-SI <br><br> **OPINION AND ORDER** |

Joseph Walsh, 7348 SE Division Street, Portland, OR 97206, *pro se*.

Harry M. Auerbach, Chief Deputy City Attorney, David A. Landrum, Senior Deputy City Attorney, and Daniel A. Simon, Assistant Deputy City Attorney, OFFICE OF CITY ATTORNEY, City of Portland, 1221 SW Fourth Avenue, Room 430, Portland, OR 97204. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

The Court previously granted injunctive and declaratory relief in favor of Plaintiff Joseph Walsh ("Walsh" or "Plaintiff") against the City of Portland's ("City") then-existing exclusion ordinance, Portland City Code § 3.15.020B.5.b. That ordinance allowed Defendants prospectively to exclude persons from City Hall and City Council Chambers solely based on past incidents of disruption during City Council meetings. The Court held that on its face, this

ordinance violates the First Amendment to the U.S. Constitution. *Walsh v. Enge*, 154 F. Supp. 3d 1113, 1118 (D. Or. 2015). Based on that finding, the Court permanently enjoined Defendants from directing or enforcing any prospective exclusions pursuant to the ordinance. After the Court issued its ruling, the City enacted a new exclusion ordinance, Ordinance 188280 (identified by Plaintiff as Ordinance #255) ("New Exclusion Ordinance"). Walsh now requests that the Court "enforce" the Court's previous injunction against the New Exclusion Ordinance. Walsh argues that by enacting the New Exclusion Ordinance, the Portland City Council violated the Court's injunction. For the following reasons, the Court denies Walsh's motion.

## BACKGROUND

### A. The Court's Injunction

The Court's injunction in this case, entered on December 31, 2015, states:

> Defendants, each of them and their agents and employees, and all those in active concert or participation with them, shall not direct or enforce any prospective exclusions pursuant to Portland City Code § 3.15.020B.5.b and the City's "Rules of Conduct for City of Portland Properties," solely based on past incidents of disruption during City Council meetings.

ECF 30 at 1.

### B. The New Exclusion Ordinance

On March 15, 2017, the Portland City Council adopted the New Exclusion Ordinance, which, among other things, establishes rules of conduct and ejection and exclusion procedures for City Council meetings and City property. The New Exclusion Ordinance became effective 30 days after its passage, on April 14, 2017. ECF 41 at 2, ¶ 4. The New Exclusion Ordinance amends certain sections of the City Code relating to duties of the presiding officer, conduct at meetings and on City property, and ejection and exclusion. *See* ECF 41-1 at 1-3.

The New Exclusion Ordinance adds Section 3.02.060 "Rules of Conduct at City Council Meetings, Ejection and Exclusion," which allows the presiding officer or his or her designee to warn a person engaging in disruptive behavior and then to eject that person if the behavior continues. If a person has previously been ejected for dangerous or threatening behavior or for disruptive behavior on three or more occasions, that person "shall" be excluded from future City Council meetings for 30 days. If the person has been excluded from City Council meetings on one or more occasions within one year, that person "shall" be excluded from future City Council meetings for 60 days. A person excluded may appeal the exclusion to the Code Hearings Officer. The appeal must be in writing and made within five days of the issuance of the exclusion notice. This code of conduct also applies to any public meeting of a City board or commission. *See* ECF 41-1 at 6-8.

The New Exclusion Ordinance also adds Chapter 3.18 "Rules of Conduct for City Property." This chapter grants the power to order persons to leave City Property to peace officers, reserve officers, persons providing security services under a contract with the City, City bureau property or facility managers or designees, the director or manager of a City bureau facility or office space or designee, certain specific designees, the Mayor, Commissioners, and Auditors, as "persons-in-charge." These rules of conduct include numerous provisions regarding the type of materials that may be brought onto City property, how materials and technology that exist on City property may be handled, how persons must obey all reasonable directions of persons-in-charge, how persons may not interfere with free passage of City employees or authorized visitors, noise restrictions, alcohol and controlled substance restrictions, animal restrictions, restrictions on wheeled devices, camping restrictions, and general use restrictions. *See* ECF 41-1 at 11-14.

PAGE 3 – OPINION AND ORDER

If a person violates any of these rules, a person-in-charge may eject them for 24 hours. In addition, the director of the bureau assigned property management responsibility where the violation occurred, or his or her designee, may issue an exclusion from City Property for any period of time up to one year. The person excluded may appeal the exclusion to the Code Hearings Officer in writing within five days of the issuance of the exclusion notice. If, however, public meetings of City Council or boards or commissions are held on a City Property, then ejectment and exclusion from the public meeting must comply with the public meeting rules, Section 3.02.060. *See* ECF 41-1 at 14-15.

C. **Declaration of Non-Enforcement of New Exclusion Ordinance**

Current Portland Mayor Ted Wheeler publicly stated at the time of voting in favor of the New Exclusion Ordinance that neither he nor anyone else acting on behalf of the City will enforce the provisions of the New Exclusion Ordinance unless and until the Court's injunction is lifted or modified to permit the City to do so. Mayor Wheeler also filed a Declaration in this case, acknowledging that he is "aware that this Court has enjoined me and the City not to exclude disruptive individuals from City Council meetings for longer than the duration of the meeting that they have disrupted." ECF 41 at 2, ¶ 6. In his Declaration, Mayor Wheeler states his belief that the Constitution of the United States does not prohibit excluding disruptive individuals from meetings but reiterates his earlier statement that the New Exclusion Ordinance will not be enforced until the Court's injunction has been lifted or modified. *Id.*

## DISCUSSION

Walsh argues that by simply passing the New Exclusion Ordinance, the City Council violated the Court's injunction. The Court, however, enjoined the City from enforcing prospective exclusions pursuant to Portland City Code § 3.15.020B.5.b and the City's "Rules of Conduct for City of Portland Properties," solely based on past incidents of disruption during City

PAGE 4 – OPINION AND ORDER

Council meetings. Thus, the mere act of passing, or enacting, the New Exclusion Ordinance, as distinct from enforcing it, does not violate the Court's injunction.

As a litigant proceeding *pro se*, the Court liberally construes Walsh's filings. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). The Court construes Walsh's filings to argue that the New Exclusion Ordinance is unconstitutional, suffering from the same or similar deficiencies as the previous exclusion ordinance the Court already found to violate the First Amendment. The problem with Walsh's argument, however, is that the City has not yet enforced, or even threatened to enforce, the New Exclusion Ordinance against Walsh or anyone else. To the contrary, the City affirmatively has stated that it will not enforce the New Exclusion Ordinance unless and until the Court's injunction has been lifted or modified. Thus, Walsh has not yet been harmed, or even threatened with harm, by the New Exclusion Ordinance. Because the City has at this time disavowed enforcing the New Exclusion Ordinance, Walsh currently does not have standing to challenge the ordinance, and Walsh's request that the Court invalidate the ordinance seeks an improper advisory opinion.

## A. Standing

To have standing, a plaintiff must have a "personal interest . . . at the commencement of the litigation." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 170 (2000). The personal interest must satisfy three elements throughout litigation: (1) an injury in fact, *i.e.*, an invasion of a legally protected interest that is concrete and particularized, as well as actual or imminent; (2) a causal connection between the injury-in-fact and the defendant's challenged behavior; and (3) likelihood that the injury-in-fact will be redressed by a favorable ruling. *Id.* at 180-81, 189; *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Declaratory and injunctive relief also require "a 'substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Culinary Workers Union, Local 226 v. Del*

*Papa*, 200 F.3d 614, 617 (9th Cir. 1999) (alteration in original) (quoting *Ross v. Alaska*, 189 F.3d 1107, 1114 (9th Cir. 1999)).

"A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement. But [o]ne does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (alteration in original) (quotation marks and citations omitted). It is sufficient to show that "a credible threat of prosecution" exists "[w]hen the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by [the challenged] statute." *Id.* The bar for such a showing is low. The Supreme Court has found a credible threat of prosecution even when the government has never enforced the statute but "has not disavowed any intention of invoking" the statute's penalties. *Id.* at 302.

When First Amendment rights are at stake, the Supreme Court has altered its traditional rules of standing with the "overbreadth doctrine" to allow persons who are themselves unharmed by a statute to challenge it facially on the ground that it may be applied unconstitutionally to others, in situations not before the Court. *See Bd. of Trs. v. Fox*, 492 U.S. 469, 484 (1989). Further, in the First Amendment context, "an actual injury can exist when the plaintiff is chilled from exercising her right to free expression or forgoes expression in order to avoid enforcement consequences." *N.H. Right to Life Political Action Comm. v. Gardner*, 99 F.3d 8, 13 (1st Cir. 1996).

Walsh can show that Defendants have a written policy (the New Exclusion Ordinance) that may form the basis of a realistic threat of repeated harm. *See Nordstrom v. Ryan*, 762 F.3d 903, 911 (9th Cir. 2014) (noting that a plaintiff can show a realistic threat of repeated future

harm by showing that the defendant had, at the time of injury, a written policy and that the injury stems from that written policy). Because Defendants have expressly disavowed enforcing that policy, however, Walsh does not at this time have a credible threat of being harmed by the New Exclusion Ordinance. Accordingly, Walsh currently does not have standing to challenge it. *See City of L.A. v. Lyons*, 461 U.S. 95, 105 (1983) (holding that the plaintiff "failed to demonstrate a case or controversy" because he had not established "a real and immediate threat" of future prosecution); *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) (noting that the threat of repeated future injury may not be "conjectural or hypothetical"); *Magee v. United States*, 93 F. Supp. 2d 161, 164 (D.R.I. 2000) (finding the plaintiff had no standing to challenge a statute on First Amendment grounds where the Attorney General stated she would not defend or enforce the statute and where the plaintiff could not cite a single instance where any person had been prosecuted under the statute); *cf. Babbitt*, 442 U.S. at 302 (holding that there may be a credible threat of future prosecution when the government has *not* expressly disavowed enforcement).

## B. Advisory Opinion

"The exercise of judicial power under Art. III of the Constitution depends on the existence of a case or controversy. . . . [A] federal court has neither the power to render advisory opinions nor 'to decide questions that cannot affect the rights of litigants in the case before them.'" *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)). Accordingly, the request by Walsh for the Court to rule on the validity of the New Exclusion Ordinance, which is not currently being enforced by the City against Walsh or anyone else, calls for an improper advisory opinion by the Court. *See id.*; *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 347 (1936) (identifying types of cases that call for improper advisory opinions, including when a court is being asked to "pass upon the validity of a statute upon complaint of one who fails to show that he is injured by its operation").

## CONCLUSION

Walsh's Motion for Enforcement of Judge's Order (ECF 38) is DENIED.

**IT IS SO ORDERED**.

DATED this 5th day of May, 2017.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge
